RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0114p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 12-2108

*v.*

JESSE DANIEL WILLIAMS III,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cr-00094-2—Paul Lewis Maloney, Chief District Judge.

Decided and Filed:  June 2, 2014

Before:  DAUGHTREY, COOK, and WHITE, Circuit Judges.

---

### COUNSEL

---

**ON BRIEF:**  Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, Dennis G. Terez, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Mark V. Courtade, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

---

### OPINION

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Jessie Daniels Williams was convicted by a jury on two counts of possessing cocaine with the intent to distribute and one count of maintaining a drug-involved premises.  He was sentenced as a career offender to a total of 360 months in prison.  He now appeals both his conviction and his sentence, contending (1) that the almost two-year delay between his first indictment and the commencement of his trial violated his Sixth Amendment right to a speedy trial; (2) that the district court's actions in

1

allowing the delay to occur violated his rights under the Speedy Trial Act; (3) that he was denied the effective assistance of counsel; and (4) that he was wrongly classified as a career offender, rendering his sentence procedurally unreasonable. For the reasons set out below, we find no reversible error and affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Williams was initially indicted by a federal grand jury on April 15, 2010, on charges of possession of cocaine with intent to distribute, maintaining a drug-involved premises, and being a felon in possession of a handgun. The charges stemmed from the execution of a search warrant at Williams's residence in Lansing, Michigan, that took place ten days earlier. During the search, police seized a .40 caliber semiautomatic pistol, 1.3 grams of cocaine, and more than $16,350 in cash in Williams's bedroom, as well as over 500 grams of cocaine, small amounts of crack cocaine, significant amounts of money in cash, and assorted drug paraphernalia in the common areas of the house and in the bedroom belonging to Williams's roommate, Anthony Jermaine Wilson. Wilson was also charged in the indictment with maintaining a drug-involved premises and with possession of more than 500 grams of cocaine with the intent to distribute. However, because police did not know the whereabouts of either Wilson or Williams, neither man could be arrested immediately. Williams was eventually picked up by the Lansing police on July 10, 2010, after they encountered him on the street during the investigation of a reported home invasion. At the time officers spotted him, Williams was carrying a duffel bag that was later found to contain large amounts of cocaine, cocaine base, and cash.

After he was arrested, Williams was charged with two state felony drug crimes, both of which were ultimately dismissed. Nevertheless, he remained in state custody and, after October 8, 2010, in state prison, following his guilty plea to violating the terms of his probation arising from an earlier state drug conviction. Williams was surrendered to federal marshals in March 2011, and he was arraigned on March 23, 2011. Initially represented by a member of the federal defender's office, Sean Tilton, Williams was assigned a new attorney on May 26, based on his contention that new counsel was necessary because of fundamental disagreements with Tilton over the prosecution of his case. Tilton agreed that there had been "a certain breakdown in the attorney/client relationship" that had made communication with Williams "very difficult." The

magistrate judge handling the case granted Williams's motion for a new attorney but warned Williams that the court would not be inclined to grant a second such motion.

Two weeks later, on June 9, Michael Dunn, a lawyer with 23 years' experience in federal court, was appointed to represent Williams. That same day, the government filed a five-count superseding indictment that charged Williams with two new offenses: one count of possessing cocaine with the intent to distribute and a second count charging possession of cocaine base with the intent to distribute, both stemming from seizures of contraband at the time of his arrest on July 10, 2010, three months after the first indictment was returned. Williams was arraigned on the superseding indictment on June 27, 2011.

On July 26, 2011, Williams wrote a letter to the court, expressing his concern with the performance of his lawyer. He claimed that Dunn had "a noticable [sic] grudge against me" and that Dunn was "more interested in helping the U.S. Attorney find me guilty rather than fighting to prove my innocence." The district court construed this letter as a motion to appoint new counsel and held a hearing on the matter on August 11. During the hearing, Williams explained that he was dissatisfied with Dunn's performance because Dunn refused to file the pretrial motions that Williams had asked him to file. Dunn explained to the court that he had declined to file the motions because they had no merit and because he did not believe that it would be in Williams's best interest to file them. When asked whether he had any additional comments, Dunn indicated that when Williams wrote his letter to the court complaining about Dunn's performance, Dunn himself was "in the process of drafting my first motion to have [replacement] counsel appointed . . . in 23 years." Despite Dunn's testimony that he and Williams "really clash heads, because [Williams] does not believe I have the ability, the capacity, or the understanding in order to proceed," Dunn expressed his willingness to stay on the case if the court wished him to do so. But Dunn also informed the court that if he were to remain on the case, he would in all likelihood need to ask for a continuance, explaining that because of his conflict with Williams, he was behind in his preparation for trial. The district court was agreeable to this resolution of the matter but instructed Dunn to have Williams personally endorse any motion for continuance that Dunn filed with the court.

Dunn filed a motion for a 60-day ends-of-justice continuance, noting that Williams had agreed to the continuance. However, the motion did not include Williams's signature. Dunn indicated that he had "not been able to get Defendant's signature because of the expedited nature of this motion" and promised to "supplement at a later date." The court granted the continuance and, in an amended order filed on August 26, explained the reasons for the grant. The court also postponed trial until November 30.

On October 21, just over a month prior to trial, Dunn moved to withdraw as Williams's counsel. His withdrawal was necessary, he said, because there had been a "drastic and irreconcilable breakdown of the attorney-client relationship" that prevented him from being able to provide Williams with adequate representation going forward. In the motion, Dunn also asserted that Williams had repeatedly requested that he withdraw as Williams's lawyer and noted the "growing (and very uncomfortable and unproductive) hostility" that Williams exhibited towards him. After holding yet another hearing on the motion and receiving sealed testimony from Dunn describing veiled threats that he had received from Williams and his associates if he did not stop representing Williams, the court granted his motion to withdraw.

Some three weeks later, on November 9, Paul Mitchell was assigned to represent Williams, the third court-appointed lawyer to occupy this role. On November 21, a day before the scheduled pre-trial conference, Mitchell filed a motion to dismiss the charges against his client, on the ground that the date set for Williams's trial violated the Speedy Trial Act, 18 U.S.C. § 3162(a)(2). At the pre-trial conference the next day, Mitchell informed the court that he was still reviewing the case to determine whether to file other pre-trial motions. In order to allow Mitchell adequate time to review the record, the district court entered a *sua sponte* ends-of-justice continuance. The court also granted Mitchell until December 16 to file pre-trial motions and subsequently extended this period by 16 days at Mitchell's request.

On December 22, the court denied the November 21 motion to dismiss. On January 30, 2012, Williams wrote another letter to the court to complain about the performance of his court-appointed lawyer. The district court construed this as a *pro se* motion to appoint new counsel and, after holding a hearing on the motion on February 15, 2012, denied it the next day.

Trial began on March 6, 2012.  On March 8, the jury found Williams guilty of possessing less than 500 grams of cocaine with the intent to distribute (Count One of the superseding indictment), maintaining a drug-involved premises (Count Two), and possessing more than 500 grams of cocaine with the intent to distribute (Count Four).  The jury found Williams not guilty of being a felon in possession of a firearm (Count Three).  Count Five, charging possession of cocaine base, had been dismissed prior to trial at the government's request.

After trial, Williams sent numerous letters to the district court asking the court to order attorney Mitchell to file a motion of acquittal on his behalf and expressing continuing frustration with Mitchell's performance.  At sentencing on August 20, the district court construed these letters as *pro se* motions for removal of counsel and denied them, noting that Mitchell had "vigorously defended [his client], in the Court's judgment" and that he was "one of the most experienced and skillful defense lawyers on the Criminal Justice Act appointment list."  The court also rejected Mitchell's objections to the presentence report, including an objection to the report's recommendation that Williams be classified as a career offender, pursuant to USSG § 4B1.1.  The court instead adopted the recommendations provided in the presentence report and sentenced Williams as a career offender to a within-guidelines sentence of 360 months.  Williams, with the assistance of new counsel, now appeals both his conviction and his sentence.

## II.  DISCUSSION

### A.  Sixth Amendment Right to a Speedy Trial

Williams first argues that his conviction is invalid because the 690-day delay between the date of his original indictment on the federal charges and the commencement of trial violated his Sixth Amendment right to a speedy trial.  "In determining whether a defendant's [Sixth Amendment] right to a speedy trial has been violated, this court reviews questions of law *de novo* and questions of fact under the clearly erroneous standard."  *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007) (quoting *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006)).  If we find that a defendant's Sixth Amendment right to a speedy trial was violated, the charges must be dismissed with prejudice.  *United States v. Bilsky*, 664 F.2d 613, 617 (6th Cir. 1981).

In its seminal speedy-trial opinion, *Barker v. Wingo*, the Supreme Court identified four factors that courts should take into account when determining whether a defendant's Sixth Amendment right has been violated:  (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant." 407 U.S. 514, 530 (1972).  The first factor is a threshold requirement.  *Id.*  "[I]f the length of the delay is not uncommonly long, then the judicial examination ends."  *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006) (internal citation and quotation marks omitted).  Conversely, a delay of one year or more is considered "presumptively prejudicial" and, as such, satisfies the first *Barker* factor, triggering examination of the remaining three.  *Id.*

In this case, it is undisputed that a delay of more than one year occurred between Williams's initial indictment on April 15, 2010, and the commencement of trial on March 6, 2012.  Determining whether Williams's Sixth Amendment rights were violated therefore depends upon an analysis of the remaining three *Barker* factors.

*The Reason for the Delay*

Courts assign "different weights . . . to different reasons" for the government's delay. *Barker*, 407 U.S. at 531.  "Governmental delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while neutral reasons such as negligence are weighted less heavily, and valid reasons for a delay weigh in favor of the government."  *Robinson*, 455 F.3d at 607.

There is no question about the constitutional validity of the delay between the date Williams was first indicted, on April 15, 2010, and his first arraignment on federal charges, on March 23, 2011.  For all but two days of this period, Williams was not in federal custody, either because he had not yet been apprehended or because he remained in the custody of the State of Michigan.  Hence, he could not be arraigned and his case could not proceed.  Williams argues that the delay was not valid because it was not his fault.  But, as we noted in *United States v. Schreane*, "[T]he second *Barker* factor is not a search for a blameless party . . . ; instead, the concern is with whether the government or the criminal defendant is more to blame for the delay."  331 F.3d 548, 554 (6th Cir. 2003) (internal citations, quotation marks, and alteration

omitted).  Here, Williams points to nothing to suggest that the government was *more* to blame for the initial delay in apprehending him than he himself, or that it acted in bad faith or was negligent in failing to locate him.  Nor is there any evidence that the government acted negligently or in bad faith when it waited until the State of Michigan, which had initial custody of Williams, dismissed the state drug charges against him before it requested his transfer to federal court — a common process in cases involving both state and federal jurisdiction.  *See Schreane*, 331 F.3d at 554-55.

As for the subsequent one-year period between Williams's arraignment on the superseding indictment on March 23, 2011, and the commencement of his trial on March 5, 2012, the delay was almost entirely attributable to the antagonistic relationship that Williams developed with the three attorneys appointed to represent him.  Williams argues in response that these problems stemmed from his attorneys' persistent efforts to negotiate a plea agreement despite his clearly-expressed desire to go to trial.  What he cannot explain, however, is how this makes the government or the district court "more to blame for the delay" than the defense.  Indeed, Williams has identified no specific action by the prosecution or the district court that stymied the progress of his case, other than the court's decision to grant Dunn's motion for a continuance even though Williams had not signed the motion as the court requested.  This situation simply does not constitute dilatory action on the part of the district court, which ruled promptly on all motions before it — at least those that were properly submitted through counsel — and acted expeditiously to appoint Williams new representation when necessary.

*The Defendant's Assertion of His Right*

The third factor considers whether the defendant effectively asserted his speedy trial right.  Because "[t]he strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences, . . . [t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."  *Barker*, 407 U.S. at 531-32.  "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Id.* at 532.

The government asserts that the first time that Williams or his lawyers communicated his desire for a speedy trial was on November 21, 2011, when his third attorney, Mitchell, filed a motion for dismissal based on the court's alleged violation of the Speedy Trial Act. Williams insists that he expressed his desire for a speedy trial from the beginning of the proceedings against him. Indeed, the record shows that Williams insisted on multiple occasions that he wanted to go to trial, rather than to accept a plea deal. But the record also shows that at the same time he expressed his desire to go to trial, Williams also wanted defense counsel to file numerous motions on his behalf or requested the court to appoint new counsel, thereby impeding the progress of the case at least temporarily. Hence, it is not at all clear that, on those occasions when Williams purportedly asserted his desire to go to trial, he was insisting on a "speedy" trial rather than expressing rejection of counsel's efforts to secure a favorable plea agreement with the government. Moreover, the fact that he did not assert his right to a speedy trial for some eight months after he was arraigned and sixteen months after he was arrested is sufficient to "cast doubt on the sincerity of [the defendant's] demand." *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999).

*Prejudice to the Defendant*

The last factor to be considered is whether Williams was prejudiced by the delay. Prejudice is evaluated with respect to the three purposes of the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Williams argues that the time he spent in jail awaiting trial caused him harm, insofar as it "restrain[ed] . . . his liberty" and forced him to live "under a cloud of anxiety, suspicion, and often hostility," quoting *Barker*, 407 U.S. at 533. However, even if he had not been in federal custody, he would have remained in state prison for most, if not all, of that time, due to his conviction for violating probation.[1] Furthermore, Williams fails to identify any other way in

---

[1]According to the records of the Michigan Department of Corrections, had Williams not been turned over to federal marshals on a writ of *habeas corpus ad prosequendum* on March 11, 2011, the earliest he could have been

which he was prejudiced by the delay. As we have noted, "When a defendant is unable to articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced." *United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994). In this case, because there is no evidence that the government acted in bad faith or even negligently caused the delay, there can be no presumption of prejudice.

In short, Williams has not been able to demonstrate that the delay was caused by bad faith or negligence on the part of the government, or that he was prejudiced by it. As a result, his Sixth Amendment claim must fail.

## B. Speedy Trial Act

Williams also argues that the delay between his indictment and his trial violated the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. That statute requires that a defendant be brought to trial within 70 days of the date of indictment, the date the indictment was unsealed, or the date of the initial appearance, whichever date occurs last. 18 U.S.C. § 3161(c)(1). Nevertheless, the Act carves out a number of exclusions that can toll the running of the 70-day period. These excludable periods include "[a]ny period of delay resulting from other proceedings concerning the defendant," "any period of delay resulting from the absence or unavailability of the defendant or an essential witness," and any period of delay resulting from a continuance "granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government." 18 U.S.C. § 3161(h)(1), (3)(A), (7)(A). In order to stop the speedy-trial clock, however, a continuance must be based on a court's "findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). When determining whether the ends of justice outweigh the public and defendant's interests in a speedy trial, the Act requires the district court to consider several factors, including "[w]hether the failure to grant such a continuance . . . would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice" and "[w]hether the failure to grant such a continuance in a case . . . would deny counsel for the defendant or the attorney for the Government the reasonable

---

released from jail on the probation-violation sentence was October 6, 2011, and the latest date of discharge was October 6, 2049.

time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(i), (iv).  It also requires a court to "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).

Williams argues that the district court abused its discretion under the Act when it granted a 60-day ends-of-justice continuance on August 18, 2011.  He contends that the continuance was granted on insufficient grounds and, alternatively, that the court failed to adequately explain its reasons for granting the continuance, as 18 U.S.C. § 3161(h)(7)(A) requires.

*Standard of Review*

We review the district court's decision to grant an ends-of-justice continuance under an abuse-of-discretion standard.  *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000). Williams argues that the district court abused its discretion when it granted the ends-of-justice continuance because the statutory factors did not support the grant and because Williams did not consent to it.  Neither argument has merit.

Eighteen U.S.C. § 3161 (h)(7)(B)(iv) allows a court to grant a continuance when "the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." Here, Dunn informed the court at the August 11 hearing that he would need additional time to prepare for trial because the conflict that had arisen between himself and Williams had impeded his efforts at preparation.  Because the district court granted the ends-of-justice continuance on this basis, as it indicated in the order, the decision was well within the discretion afforded district courts by statute.

Williams argues that because the order indicated that the continuance was intended to allow Dunn to "review evidence, meet with the defendant, and possibl[y] find a resolution *short of trial*," the grant of the continuance was an abuse of the court's discretion because the court knew that Williams wished to proceed to trial rather than to accept a plea deal.  He thus contends that the continuance served a purpose that "Attorney Dunn did not need and that Mr. Williams

did not want." But the continuance was not entered solely to allow Dunn to seek a resolution "short of trial" — it was also intended to allow Dunn to prepare for trial, in the eventuality that there was one.

There is also no merit to Williams's argument that the district court abused its discretion by granting the motion to continue despite the absence of Williams's signature on the motion. The Speedy Trial Act does not require a defendant's consent to stop the running of the speedy-trial clock. *United States v. Stewart*, 628 F.3d 246, 254 (6th Cir. 2010). Furthermore, in his motion for continuance, Dunn represented to the court that Williams *had* consented but merely had not signed. Williams argues that the court abused its discretion nonetheless because it should have recognized Williams's desire for a speedy trial at that point and determined that Williams had not willingly consented to a continuance. However, as discussed above, Williams did not clearly state his desire for a speedy trial until November — two months after the continuance was granted on August 18. All that the court knew when it granted the continuance was that Williams wanted to go to trial, that he had expressed some concern about the length of the continuance, and that Dunn required the continuance in order to adequately prepare for trial. Under these circumstances, it was not an abuse of discretion for the court to conclude that the ends of justice merited the granting of the continuance.

*Failure to State Reasons*

As noted above, under the Speedy Trial Act a court must detail its reasons for finding that the ends of justice outweigh the best interests of the defendant and the public in a speedy trial and must do so at least by the time it rules on a defendant's motion to dismiss under the Act. *Zedner v. United States*, 547 U.S. 489, 506-07 (2006). Ideally, a court should provide these reasons "at or near the time it grants the continuance." *Id.* at 507 n.7 (noting that this is the "best practice").

In this case, the district court did so. Although it provided no explanation for its decision in the initial order granting the continuance, the court issued an amended order eight days later, which read in relevant part:

> Before the Court is a motion by the defendant for an ends of justice continuance
> . . . . The basis of the motion is that additional time is necessary for defense

counsel to review evidence, meet with the defendant and possibl[y] find a resolution short of trial. If a resolution is not possible, additional time is necessary for defendant to prepare a defense. The government does not oppose the motion. The Court finds that the ends of justice served by the granting of a continuance outweighs [sic] the best interest of the public and the defendant in a speedy trial. NOW THEREFORE, pursuant to 18 U.S.C § 3161(h)(7)(B)(iv), an ends of justice continuance is hereby entered.

Williams argues that because the court phrased its explanation as a restatement of the defense counsel's argument for the continuance, it did not satisfy the requirements of § 3161(h)(7)(A). However, in granting the continuance under § 3161(h)(7)(B)(iv) to allow a "reasonable time necessary for effective preparation," the court indicated that it found defense counsel's arguments credible and was granting the continuance in order to allow Dunn to gather evidence and prepare for trial. We conclude that the district court did not abuse its discretion or otherwise violate the Speedy Trial Act when it granted the August 18 continuance.

**C. Ineffective Assistance of Counsel**

Williams contends on appeal that his attorney was constitutionally ineffective for three reasons: (1) counsel failed to file a motion to sever Williams's case from that of his co-defendant, Wilson, thus delaying progress of the case in getting to trial; (2) counsel requested an unjustified continuance (namely, the August 18 continuance discussed above); and (3) counsel failed to file a second motion for violations of the Speedy Trial Act after the first one was denied.

Typically, we do not address ineffective-assistance-of-counsel arguments on direct appeal, although we have done so when "the record is adequate to assess the merits of the defendant's allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). Otherwise, we leave the defendant to the preferred mechanism of raising a claim of ineffective assistance of counsel under 28 U.S.C. § 2255. In this case, Williams argues that "the evidence germane to [his] ineffective assistance claim is already part of the district court record." What Williams refers to here are the numerous complaints he made during the progress of the case about the deficiencies of his various lawyers. But the complaints do not provide material necessary to review Williams's claims. They do not, for example, provide any information about why Williams's various lawyers chose to take the actions they took. Nor is there anything in the

record to explain why Williams's signature did not end up on the motion for a continuance that Dunn filed on August 18.  We would therefore have "no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Nor could we ascertain "whether the alleged error[s were] prejudicial." *Id.*  Without an evidentiary hearing, it is simply not possible for us to properly determine whether Tilton, Dunn, or Mitchell provided Williams constitutionally ineffective representation.

**D.  Career-Offender Sentencing**

Finally, Williams challenges the district court's decision to sentence him as a career offender under USSG § 4B1.1(a), contending that the court incorrectly interpreted the relevant provision in subsection (3) of that guideline, which provides that a defendant is a "career offender" if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  The district court classified Williams as a career offender on the basis of a prior conviction for a felony controlled-substance offense and a prior conviction for fourth-degree fleeing and eluding.  This court held that the latter offense qualified as a "violent felony" in *United States v. Young*, 580 F.3d 373, 379, 381 (6th Cir. 2009) (holding that the defendant's conviction of fleeing and eluding, second offense, Mich. Comp. Laws § 257.602a, which, like fourth-degree fleeing and eluding, is punishable as a felony, qualifies as a violent felony under the Armed Career Criminal Act).

Williams asserts that the court erred in counting his prior state conviction for fourth-degree fleeing and eluding as one of the two "prior felony convictions" necessary to qualify as a career offender under § 4B1.1(a).  As § 4B1.2(c) of the Sentencing Guidelines makes clear, in order to count as one of the two "prior felony convictions" under § 4B1.1(a), the sentences for the prior convictions must be "counted separately under the provisions of  § 4A1.1(a), (b), or (c)" — that is, they must add points to the defendant's criminal history under one of those provisions. Section 4A1.2(a)(2) of the Sentencing Guidelines in turn provides that, when a defendant is sentenced to concurrent sentences of imprisonment and the sentences count as a single sentence either because they (1) "resulted from offenses contained in the same charging instrument" or

(2) were imposed on the same day," only the longest sentence counts separately under the provisions of § 4A1.1(a), (b), or (c).

Williams points out that on the same day he was sentenced for fourth-degree fleeing and eluding, he received identical, concurrent sentences for possessing less than 25 grams of a controlled substance and resisting a police officer, neither of which is a "crime of violence" for federal sentencing purposes. He insists that, as a result, his fleeing-and-eluding conviction does not "count separately" under the provisions of § 4A1.1(a), (b), or (c), and cannot constitute a prior conviction for a crime of violence. In making this argument, Williams relies heavily on an Eighth Circuit opinion, *King v. United States*, 595 F.3d 844 (8th Cir. 2010), in which the court held that if there is ambiguity about which of several related sentences count under the provisions of § 4A1.1(a), (b), or (c), the rule of lenity requires that the defendant receive the benefit of the doubt.

The district court dismissed Williams's rule-of-lenity argument because it led to a "ridiculous result," *i.e.*, "that a . . . predicate that you would otherwise score is not scored because [the defendant] got convicted of other crimes at the same time, which were not predicates." As Williams points out, however, in *King*, the Eighth Circuit reached the opposite conclusion on similar facts. In that case, the defendant was sentenced as a career offender on the basis of two prior, unrelated convictions for resisting arrest, which — standing alone — qualified as crimes of violence. *Id.* at 3d at 844, 850-51. King appealed this sentence, arguing that because his sentences for resisting arrest were imposed on the same day as, and ran concurrently with, sentences for other, non-qualifying convictions, neither should count as a prior felony conviction for purposes of § 4B1.1(a). The Eighth Circuit agreed. With respect to the first resisting-arrest conviction, it reached this conclusion relatively easily because another sentence for a non-predicate crime that was imposed at the same time as the sentence for resisting-arrest exceeded it in length. Straightforwardly applying § 4A1.2(a)(2), the court concluded that it was the other conviction, rather than the resisting-arrest conviction, that contributed points to King's criminal history pursuant to § 4A1.1(a). For that reason, the court concluded, the resisting-arrest conviction did not count as a prior felony conviction. *King*, 595 F.3d at 849.

The court found the status of the second resisting-arrest conviction more difficult to determine because no other concurrent sentence exceeded the sentence imposed for resisting-arrest. Instead, King received on the same day identical suspended sentences for resisting arrest and for possessing a controlled substance, as well as a shorter, concurrent sentence for possessing marijuana. *Id.* at 849-50. The court found that, because "King received equivalent suspended sentences for the first [two convictions] . . . , it is unclear which should receive a criminal history point. Either both of them are 'the longest sentence of imprisonment,' . . . or neither is." *Id.* (quoting § 4A1.2(a)(2)). The court ultimately concluded that, given this ambiguity, the rule of lenity required that the non-predicate sentence for possessing a controlled substance be considered the sentence that "counted separately under the provisions of § 4A1.1(a), (b), or (c)" because doing so would result in King serving a shorter sentence. *King*, 595 F.3d at 850-51 (quoting *United States v. Oetken*, 241 F.3d 1057, 1060 (8th Cir. 2001) ("Where there are two plausible readings of a guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence.")).

At sentencing, the district court rejected this argument and instead relied upon a Western District of Kentucky opinion, *United States v. Clark*, 227 F. Supp. 2d 693 (W.D. Ky. 2002), one that the *King* court considered and rejected. In the *Clark* opinion, the district court suggested that it did not matter which of two identical concurrent sentence received points under § 4A1.1(a), (b), or (c), because even if a predicate "crime of violence" or "controlled substance offense" did not count under those provisions, it would still merit a criminal history point under what is now § 4A1.1(e) (then § 4A1.1(f)) and thereby qualify as a prior "crime of violence." *Id.* at 694-95. The problem with this reasoning is, of course, that the guideline specifies subsections (a), (b), and (c), and does not include (e), even though subsection (e) clearly refers to the addition of points for a "crime of violence."

Unlike the Eighth Circuit, we discern no ambiguity requiring application of the rule of lenity. Section 4B1.2's requirement that "the sentences for at least two of the aforementioned felony convictions [be] counted separately under the provisions of § 4A1.1(a), (b), or (c)" guards against a specific type of sentencing bootstrapping, where a single criminal episode resulting in a single sentence could satisfy the enhancement's requirement of two predicate crimes. The

guideline solves this problem by requiring the two predicate crimes to "count[] separately." Read in context, § 4B1.2 says nothing regarding the scoring of multiple crimes within a single predicate episode.

Further, in our view § 4A1.2(a)(2)'s mandate that "if prior sentences are counted as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed" for the purpose of assessing criminal history points results in no ambiguity for Williams to exploit. The Eighth Circuit found this language ambiguous because "[e]ither both of [the defendant's equivalent sentences] are 'the longest sentence of imprisonment,' or neither is." *King*, 595 F.3d at 850 (internal citation omitted). We reject this interpretation as nonsensical. If the district court were simply calculating Williams's criminal history category, it would never conclude that, simply because neither identical concurrent sentence is the "longest," Williams should be assessed no criminal history points at all. Just so here. Each of Williams's convictions, including his conviction for fourth-degree fleeing and eluding, independently supports the assessment of criminal history points under § 4A1.1 (a), (b), or (c). Section 4B1.2 requires no more.

Our holding has the added advantage of avoiding the "ridiculous result" noted by the district court. If we accepted Williams's argument, he would evade career offender status because he committed *more* crimes than the qualifying offense. Such a result cannot be squared with Congress's admonition that the Guidelines should "specify a term of imprisonment at or near the maximum term authorized for" career offenders. 28 U.S.C. § 994(h).

Accordingly, we decline to find Williams's sentence procedurally unreasonable under the Guidelines.

## III. CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.