**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Valerio V. ALEXANDER,**
**Defendant–Appellant.**

No. 15–3098.

United States Court of Appeals,
Sixth Circuit.

Oct. 14, 2015.

Before: GUY, KETHLEDGE, and STRANCH, Circuit Judges.

RALPH B. GUY, JR., Circuit Judge.

Defendant, Valerio V. Alexander, appeals his plea-based conviction on one count of Sex Trafficking of Children in violation of 18 U.S.C. §§ 1591(a) and (b). Defendant pleaded guilty in a written plea agreement, pursuant to which he was sentenced to a 15–year term of imprisonment. Defendant argues that his plea resulted from the ineffective assistance of counsel, and asks this Court to vacate his plea and remand this matter to the District Court for trial. We decline to address the merits of defendant's ineffective assistance claim, as the record is insufficient to assess it on direct appeal.

## I.

In early 2013, defendant made a deal with Thomasina Howard whereby he would provide Howard and her 16–year-old daughter (the victim) with food, housing, and illegal drugs in exchange for their services as sex workers at his apartment in Columbus, Ohio. Defendant photographed the victim in lingerie and provided her with a cellular telephone. Defendant forwarded the photographs of the victim to another woman, and instructed her to create an advertisement for the victim in the escorts section of Back-page.com, a nationwide website headquartered in Texas with servers in Arizona. The advertisement contained the photographs of the victim and a telephone number for the cellular telephone defendant gave her. Around February 8, 2013, the victim received a call from a prospective client, and defendant instructed her to meet with the client, with whom the victim engaged in sexual activity in exchange for $100. The victim later left defendant's apartment despite his attempts to convince her to remain there as a sex worker. A federal task force officer received information that the victim had been used in sex trafficking, and arrested defendant. At the time of arrest, defendant had a cellular telephone in his car which contained photographs of the victim used in the Backpage.com advertisement, as well as numerous text messages related to sex trafficking.

The grand jury returned a two-count indictment charging defendant with conspiracy to recruit a minor for commercial sex and the substantive offense. Defendant's first appointed attorney, Nathan Akamine, withdrew at defendant's request shortly before the trial date, citing a breakdown of the attorney-client relationship. The District Court pushed trial back two months to allow second appointed attorney James Gilbert to prepare for trial. Days before trial, defendant sought to fire Gilbert, even though he was prepared to go to trial, because defendant "neither wanted to go to trial nor accept a plea." Defendant then sought and received permission to substitute retained counsel. Retained counsel Javier Armengau informed the District Court that he would represent defendant only if granted a continuance. The United States opposed the continuance, citing Armengau's own pending criminal trial in February 2014. The District Court agreed to delay the trial to

January 21, 2014, and indicated that it would grant no further continuances. Nevertheless, Armengau moved for a continuance on December 30, noting that he received the file from defendant's prior counsel on December 13 and would not be prepared for trial due to the delay. The District Court denied the motion. On January 15, Armengau again moved for a continuance, indicating that the file sent by prior counsel was incomplete, and that he only received the complete file on the date of his immediate motion. The District Court again denied the motion.

Three days before trial, defendant signed a plea agreement wherein he pleaded guilty to one count of Sex Trafficking of Children, and the United States dismissed the conspiracy count and agreed to a sentence of 15 years' imprisonment. The District Court engaged defendant in a plea colloquy, and the investigating officer testified to a factual basis for the plea. Defendant indicated that portions of the officer's testimony were incorrect; namely, that he had nothing to do with posting the advertisement on Backpage.com, and that he *did* not provide a cellular telephone to the victim. Defendant stated, "I'll take the guilty plea because I have no way of proving, I guess, anything and not enough time to do so either way it goes." The District Court and United States agreed that the plea could not go forward, as defendant denied facts essential to the interstate commerce element of 18 U.S.C. § 1591. The court then called a recess during which defendant and Armengau conferred. Upon returning to court defendant then admitted to directing another person to place the Backpage.com advertisement, admitted providing a cellular telephone to the victim, and entered a guilty plea, acceptance of which the District Court held in abeyance pending review of the presentence investigation report.

On February 12, 2014, however, defendant moved to withdraw his plea on the ground that he was innocent of the charge. At a hearing on the motion, Armengau argued that the District Court should allow plea withdrawal because defendant initially pleaded not guilty, wavered in agreeing to the factual basis during his plea colloquy, and told his probation officer that he was innocent. Armengau then moved to withdraw as defense counsel. Defendant stated that he did not object to Armengau's withdrawal, and noted that Armengau "said that the prosecution denied him from the rights of speaking to the victim and that he had received the discovery packets for my case on Monday, December 16th, which didn't allow him any time to do anything."

The District Court granted Armengau's motion to withdraw and appointed substitute counsel Steven Nolder, with whom defendant had a potential conflict of interest which he waived. Two days before his scheduled sentencing, defendant informed the District Court that he was now unwilling to waive the conflict, and was appointed his fifth and current attorney, Keith Yeazel.

Defendant again moved to withdraw his guilty plea, stating in an affidavit that he pleaded guilty because he "believed that Mr. Armengau was not prepared to go to trial" and that "Mr. Armengau did not have enough time to review the evidence." At a hearing on the motion, defendant testified that Armengau told him he would hire a private investigator, question witnesses, and obtain telephone records, but did none of these things. Defendant also testified that he was unaware that Armengau was facing criminal charges at the time he retained him. According to defendant, after the District Court denied his January 15 motion to continue, Armengau advised him that "looking at the fact that

he didn't have any time to work, ... the best thing that I could do was basically sign that deal or go to court and because the fact that things wasn't [sic] looking right or something, ... that I could be facing 30 to life." Defendant testified that he accepted the plea agreement "[b]ecause Mr. Armengau was saying that he felt like that was the best thing for me, that he felt like I would lose in trial, and he didn't have to say too much more." Defendant also testified that Armengau agreed to provide him a letter stating that he did not have enough time to prepare for the trial and that the prosecutor had denied him access to witnesses, but refused to write the letter after defendant complained to the Columbus Bar Association. Defendant maintained his innocence, stating that he never made a deal with Howard or the victim related to sex trafficking. The District Court expressed concern with Armengau's handling of the case, but ultimately denied defendant's motion to withdraw his plea. Consistent with the plea agreement, the District Court sentenced defendant to 15 years in prison.

## II.

Defendant asserts that Armengau rendered ineffective assistance, resulting in his guilty plea despite his innocence. Ineffective assistance of counsel is a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, defendant must show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694, 104 S.Ct. 2052. Establishing ineffective assistance in the pleading context requires defendant to show that defense counsel's actions "caus[ed] [defendant] to plead guilty rather than go to trial," which in turn depends on "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Generally, "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir.1990). Except in rare cases where error is apparent on the record, ineffective assistance of counsel is more properly asserted in post-conviction proceedings under 28 U.S.C. § 2255, wherein the parties can develop an adequate record. *United States v. Bradley,* 400 F.3d 459, 462 (6th Cir.), *cert. denied,* 546 U.S. 862, 126 S.Ct. 145, 163 L.Ed.2d 144 (2005); *United States v. Brown,* 332 F.3d 363, 369 (6th Cir.2003).

### A. Conflict of Interest

Defendant first argues that Armengau's pending criminal trial posed a conflict of interest because it preoccupied Armengau's time, energy, and money, causing him to "sacrifice the interests of his client...." *United States v. DeFalco,* 644 F.2d 132, 139 (3d Cir.1979). Where counsel actively represents conflicting interests, and such representation adversely affects counsel's performance, prejudice is presumed. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. In *DeFalco,* counsel was under indictment by the same prosecutor and before the same judge as the defendant he represented. *DeFalco,* 644 F.2d at 137. This raised the concern that the "inherent emotional and psychological barriers" of advocating against the prosecutor with whom he was negotiating his own plea bargain "created an impermissible po-

tential of preventing ... counsel from competing vigorously with the government" on behalf of his client. *Id.* at 136.

■ Here, however, Armengau was indicted by a state prosecutor before a state judge, and defendant's charges were in federal court. Accordingly, there was no potential that Armengau's pending trial presented a *per se* conflict with his representation of defendant such that he sacrificed defendant's interests to further his own. *See Taylor v. United States*, 985 F.2d 844, 846 (6th Cir.1993) (per curiam) (no conflict where the defendant and his counsel were "indicted for separate crimes by two different authorities").

Defendant also argues that the costs of Armengau's pending trial created an overwhelming interest in payment of his fees that caused Armengau to breach his duty of loyalty. Though financial pressures may create a conflict of interest, *see Winkler v. Keane*, 7 F.3d 304, 307–310 (2d Cir. 1993) (analyzing whether a contingent fee arrangement created a conflict of interest), defendant cites no authority finding a conflict of interest in an analogous situation, and the only evidence of Armengau's fixation on fees is found in letters written after defendant's guilty plea. The record is insufficient to address this issue on direct appeal.

**B. Failure to Investigate**

■ Defendant next asserts that Armengau's representation was deficient because he failed to adequately investigate the case or prepare for trial in a timely manner. A defense attorney has a duty to investigate a client's case, which includes "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008), *cert. denied*, 558 U.S. 932, 130 S.Ct. 80, 175 L.Ed.2d 234 (2009) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir.2005)).

Defendant faults Armengau for his failure to obtain the case file from prior counsel until nearly six weeks after entering an appearance as counsel, and argues that he provided deficient representation by failing to interview crucial witnesses, obtain telephone records, or hire a private investigator.

Absent further development of the record, there is insufficient evidence to address these claims. Although defendant expressed concerns with Armengau's representation during a hearing on his second plea withdrawal motion, defendant's statements "do not provide material necessary to review [his] claims." *United States v. Williams*, 753 F.3d 626, 637 (6th Cir.2014). For example, the record does not "provide any information about why [defendant's] various lawyers chose to take the actions they took," *id.*, aside from defendant's self-serving statements that he believed Armengau did not have enough time to review the evidence or prepare for trial, and that Armengau told him "he didn't have any time to work...." Nor does the record reveal the witnesses Armengau allegedly failed to investigate, what testimony they would have offered if called, or how obtaining telephone records would have assisted the defense. *See United States v. Stuckey*, 253 Fed.Appx. 468, 492 (6th Cir. 2007) (declining to address ineffective assistance claim based on failure to call witnesses where record did not indicate testimony witnesses would have provided). With regard to a private investigator, when defendant criticized attorney James Gilbert for his failure to hire one, he offered no answer to the District Court's question about how it would have helped his defense.

As a result, "the record contains insufficient information for us to determine whether [Armengau] pursued a reasonable trial strategy" in declining to investigate witnesses, obtain telephone records, or

hire a private investigator. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir.2002) (citing *United States v. Earle*, 156 F.3d 1232, at *3 (6th Cir.1998) ("The record is not adequate for review on direct appeal if facts about the impugned attorney's decision-making process and strategy must be determined to resolve the claims of inadequate representation.")). We note that the record does, however, show that defendant repeatedly delayed proceedings below by demanding new counsel on four occasions. Defendant provided vague reasons for these demands, and most of his attorneys reluctantly withdrew out of frustration with the breakdown of their attorney-client relationship. Without an evidentiary hearing, "it is simply not possible for us to properly determine whether [Armengau] provided [defendant] constitutionally ineffective representation." *Williams*, 753 F.3d at 637. In light of the insufficiency of the record on this point, we decline to address the merits of defendant's claim on direct appeal.

**AFFIRMED.**