NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0348n.06

Case No. 21-6036

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 31, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| JORGE SANTO CABALLERO-MELGAR, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: BOGGS, GIBBONS, and McKEAGUE, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Jorge Santo Caballero-Melgar ("Caballero-Melgar") was convicted of one count of illegal reentry after deportation and four counts related to a series of armed robberies, including one that resulted in death. He was sentenced to 460 months' imprisonment. On appeal, Caballero-Melgar asserts errors in the trial proceedings, his conviction, and his sentence. He alleges insufficiency of the evidence, improper joinder, an error in the jury instructions, violation of his Sixth Amendment speedy trial right, improper denial of his motion for new counsel, and the procedural unreasonableness of his sentence. Because Caballero-Melgar fails to show any error, we affirm.

I.

From December 23, 2016, through September 2, 2017, a series of fifteen armed robberies took place across Kentucky, North Carolina, Tennessee, and Indiana. Caballero-Melgar was

involved in fourteen of the robberies. Only the March 17, 2017 robbery of the La Placita grocery store in Bowling Green, Kentucky requires further detail here.

On the afternoon of March 17, 2017, three Honduran men—Caballero-Melgar, Jose Adan Mejia Varela ("Varela"), and Jonny Reyes-Martinez ("Reyes-Martinez")—arrived in Bowling Green. Reyes-Martinez testified that Caballero-Melgar had the idea to rob the La Placita grocery store. Caballero-Melgar knew both men because he had assisted Reyes-Martinez, a childhood friend, in coming to the United States earlier that year, and he had met Varela through Varela's brother.

The three men met in a Wal-Mart parking lot, where Caballero-Melgar gave Varela and Reyes-Martinez guns to use in the robbery. The pistol given to Reyes-Martinez was unloaded, but Caballero-Melgar had extra bullets in his car. According to Reyes-Martinez, it was Caballero-Melgar's idea to have a loaded firearm with which to "react" in case people in the store had weapons or the police arrived. DE 592, Trial Tr., Page ID 3427. The three men left the parking lot to drive to La Placita, and Caballero-Melgar stationed himself as lookout at a nearby gas station.

About an hour before the robbery, the wives of Caballero-Melgar and Varela both made money transfers at La Placita. After they drove away, Caballero-Melgar entered the store, made two money transfers, and walked out about thirty minutes before the robbery would occur.

Around 3 p.m., Reyes-Martinez and Varela entered the La Placita grocery store, locking the door behind them. Reyes-Martinez carried two phones, being on the line with Caballero-Melgar on one. The two men moved the employees near the cash register and bound them with duct tape. The son and daughter of one La Placita employee were in the store; the son was waiting for his father to pick him up.

After Reyes-Martinez and Varela found the money, one of the employees' phones started ringing. The men panicked and headed for the exit. As they unlocked the door to leave, the employee shouted that they were being robbed and a man who was waiting at the door to get in—Jose Cruz, the father of the employee's son—entered and heard the cries of the employees. Varela exited, but Reyes-Martinez and Cruz struggled. Varela re-entered the store to help Reyes-Martinez. During the struggle, Reyes-Martinez shot Cruz. Cruz died from the injury.

Reyes-Martinez and Varela ran out of the store to Reyes-Martinez's car and quickly left Bowling Green. When they returned to Madison, Tennessee, they met Caballero-Melgar in a Home Depot parking lot to split the money evenly. Reyes-Martinez testified that he and Varela returned the firearms used in the robbery to Caballero-Melgar, who later told Reyes-Martinez that he had shipped them back to Honduras.

The last of the robberies took place in September 2017 at the Mercadito La Luz, located in Snow Hill, North Carolina. All of the individuals who robbed the store—Varela, Elvin Sanchez, Junior Bueso, Jose Cedillo-Salles, and Jaime Cedillo-Sales—left in one car. Caballero-Melgar had acted as a lookout and called the men to make them aware that the police were pursuing them, but they were all arrested. Caballero-Melgar was arrested a few days later on a warrant issued in an unrelated case and remained in custody subject to an extradition warrant until federal charges were issued in this litigation.

In November 2017, a grand jury indicted Caballero-Melgar and his co-conspirators on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (b)(1), and (b)(3), and one count of murder through the use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(j). The government sought approval from the Department of Justice to proceed with a death penalty specification.

In February 2019, a superseding indictment was filed. It charged Caballero-Melgar with conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a) (Count 1); conspiracy to use or carry a firearm during and in relation to robbery, 18 U.S.C. § 924(c) and (o) (Count 2); aiding and abetting the interference with commerce by robbery with actual or threatened force, 18 U.S.C. §§ 1951 and 2 (Count 3); murder through use of a firearm during a crime of violence, 18 U.S.C. § 924(c) and (j)(1) (Count 4); and illegal reentry after deportation, 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2) (Count 5). Count 3 and Count 4 were both based on the La Placita robbery.

That same month, Caballero-Melgar, acting pro se, wrote to the district court and requested the replacement of his counsel. He stated that he had met with his counsel only once since his detention and that his counsel had not answered any of his numerous calls. Before the scheduled hearing on the motion, Caballero-Melgar's appointed counsel, Bryce Caldwell, responded that he and his co-counsel, Jeffrey Darling, had met with Caballero-Melgar, who no longer desired to remove them as counsel. At the hearing, Caballero-Melgar confirmed this interaction and his intent to maintain his current counsel. The district court ordered the sealed motion withdrawn.

In May 2019, the government notified the district court that it failed to obtain approval to seek the death penalty. More months passed, and Caballero-Melgar again wrote the district court a pro se letter in October 2019. He informed the district court that he had not received discovery from counsel, asserted that he was being held in violation of his speedy trial rights, and asked for release or return to Honduras. At the subsequent hearing, Caldwell informed the district court that he and Darling had not spoken with Caballero-Melgar since receiving his letter. Caldwell explained that he and Darling had reviewed the discovery related to the original indictment with Caballero-Melgar but had not received discovery related to the superseding indictment. He also stated that he and Darling had not investigated Caballero-Melgar's claims about inaccurate

interview translations but were considering funding sources to do so. Aside from a language barrier, however, Caldwell had no issues representing Caballero-Melgar.

Caballero-Melgar then addressed the court. He stated that he did not "really have a complaint about [his counsel]" but that "the only reason [he] wrote to [the court] [was] to see if [the court] could help [him] in doing something so that the case could go along quicker." DE 611, Sealed Hearing Tr., Page ID 3730. Considering Caballero-Melgar's complaints as simply "frustration that we all feel" related to the discovery delays, *id.* at Page ID 3732, the district court urged counsel to contact the prosecution to express that frustration, reminded Caballero-Melgar that pro se motions unrelated to his representation could not be considered by the court, and denied the motion as moot.

COVID-19 delayed Caballero-Melgar's proceedings from March 2020 to September 14, 2020.[1] Caballero-Melgar then moved to continue his trial date from October 13, 2020, which the court granted, rescheduling trial for February 16, 2021. A general court order then cancelled all jury trials through February 26, 2021, so the district court rescheduled trial for April 27, 2021.

On April 9, 2021, Caballero-Melgar filed a pro se motion requesting that his counsel move to dismiss Counts 2 and 4 of the superseding indictment. The district court did not consider the motion, as it did not relate to Caballero-Melgar's representation. But two weeks later—nine days before trial—the court held a telephonic conference about the motion at the request of Caballero-Melgar's counsel.

Caballero-Melgar's counsel described how their relationship with him had grown "kind of contentious" over a few issues, mainly related to Caballero-Melgar's request to move to dismiss

---

[1] These delays were excluded from the time allowed for a speedy trial pursuant to 18 U.S.C. § 3161(h)(7)(A), (B)(i), and (B)(ii).

certain counts of the superseding indictment, which counsel believed would be a frivolous filing. DE 606, Tr., Page ID 3629-30. Other issues between Caballero-Melgar and his counsel were discussed, such as Caballero-Melgar's trial attire, possible assistance by a jailhouse lawyer with Caballero-Melgar's pro se filings, and his dissatisfaction with the government's plea offer. It was decided that defense counsel would move for a new attorney, a motion that they filed that day.

The court held an ex parte hearing on the filed motion on April 23, 2021. During the hearing, Caballero-Melgar stated that he decided to change counsel "because [he and his counsel] [were] not understanding each other," illustrated by his counsel's refusal to file the motion and Caballero-Melgar's incomplete access to discovery. DE 587, Sealed Tr. Mot. Hearing, Page ID 2801. But Caldwell rejected the notion that Caballero-Melgar had not been provided discovery and emphasized the visits he and Darling made to Caballero-Melgar in detention, although he conceded that there were certain limitations on their visits due to the necessity of an interpreter. Darling explained that Caballero-Melgar's frustration also arose from the government's plea offer for him relative to what was offered to Reyes-Martinez, but that there were no direct issues about their preparation for Caballero-Melgar's own trial.

The court explained to Caballero-Melgar that his counsel were bound to present all defenses but were "not to file motions . . . that clearly are not well supported . . . by the law or an extension of the law." DE 587, Sealed Tr. Mot. Hearing, Page ID 2799. It also explained that Caballero-Melgar's counsel could not control the government's plea offer and reiterated the government's plan to seek life imprisonment if Caballero-Melgar were found guilty at trial. After affirming that he understood the above, Caballero-Melgar maintained his request for new counsel. The district court concluded that reassignment of counsel was not warranted after balancing the

factors established in *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001), and denied the motion.

Trial proceeded on April 27, 2021. Five co-conspirators, including Reyes-Martinez, testified against Caballero-Melgar, and the government introduced forensic evidence of Caballero-Melgar's phone location in proximity to each robbery and surveillance video showing him in certain store locations before the robberies took place. The government also introduced evidence that Caballero-Melgar had re-entered the country without permission after being deported.

During the final jury instruction conference, defense counsel proposed a *Pinkerton* instruction for Count 4, to which the government objected. In response, the district court added a fifth element to its instruction about Count 4 that was "distilled from the form *Pinkerton* instruction." DE 594, Trial Tr., Page ID 3501. Defense counsel agreed that the modification was appropriate, and the government withdrew its objection. The modified instruction was given as follows:

> [T]hat in the course of the crime, the defendant or another person caused the death of J.C. by murder through the use of the firearm; and Fifth, that murder through use of the firearm was reasonably foreseeable to the defendant, meaning the defendant could have reasonably anticipated the murder as a natural consequence of the robbery.

*Id.* at Page ID 3525.

Caballero-Melgar was convicted on all counts and sentenced to 460 months' incarceration. This appeal followed.

## II.

Caballero-Melgar challenges the jury instructions regarding Count 4 of the superseding indictment and the sufficiency of the evidence underlying that count. He also argues that the district court erred by denying his motion for new counsel and improperly allowed the joinder of

Count 5, illegal reentry, with the other four counts. Finally, he argues that the delay in the proceedings violated his Sixth Amendment speedy trial right and that his sentence was procedurally unreasonable. We review each argument in turn.

### A. Jury Instruction

Caballero-Melgar first argues that the district court erred by denying defense counsel's request for the Sixth Circuit pattern *Pinkerton* instruction. The government responds that Caballero-Melgar either waived the alleged error, thus barring review, or invited the error, and therefore must satisfy plain error review if demanded by the interests of justice.

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Because waiver "'extinguishes an error under Rule 52(B),' . . . we cannot review the supposed error at all." *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021) (quoting *Olano*, 507 U.S. at 733). Waiving an issue requires "a plain, explicit concession on the record addressing the precise issue later raised on appeal." *United States v. Clark*, 24 F.4th 565, 578 (6th Cir. 2022) (quoting *United States v. Mabee*, 765 F.3d 666, 673 (6th Cir. 2014)). We have found waiver after a defendant "agree[d] in open court with a judge's proposed course of conduct." *United States v. Hall*, 373 F. App'x 588, 592 (6th Cir. 2010) (citations omitted); *see also United States v. Abdi*, 827 F. App'x 499, 506 (6th Cir. 2020) (finding waiver after defendant conceded issue in open court and changed position only on appeal).

The record shows that Caballero-Melgar's counsel waived his challenge to the *Pinkerton* instruction, barring appellate review. At the final jury instruction conference, defense counsel requested that the Sixth Circuit pattern *Pinkerton* instruction be given in relation to Count 4. The government objected, noting that the aiding and abetting instruction was sufficient to explain the

mens rea for conviction. Ultimately, the district court revised its instruction by adding "a fifth element, which is distilled from the form *Pinkerton* instruction," to the Count 4 instruction. DE 594, Trial Tr., Page ID 3501. When asked by the district court whether defense counsel agreed that the court's modification "incorporate[d] the *Pinkerton* concept," Darling stated "[y]es . . . I think that's appropriate based on [our] request." DE 594, Trial Tr, Page ID 3501. By agreeing to the modified instruction even though it did not incorporate every element of the Sixth Circuit pattern instruction regarding *Pinkerton* liability, defense counsel waived the ability to raise the issue of the instruction's completeness on appeal. We cannot review the waived claim. *Olano*, 507 U.S. at 733.

Even if Caballero-Melgar's counsel's actions sat "on the hazy border between invited error and waiver[,]" *Montgomery*, 998 F.3d at 698, Caballero-Melgar never responds to the government's alternative argument of invited error. In this circumstance, we cannot find that the "interests of justice" demand our review such that failing to do so would result in manifest injustice. *See id.* at 698-99; *see also United States v. Howard*, 947 F.3d 936, 945 (6th Cir. 2020).

**B. Sufficiency of the Evidence**

Caballero-Melgar next challenges the sufficiency of the evidence underlying his conviction for Count 4, which we review de novo. *United States v. Hall*, 20 F.4th 1085, 1105 (6th Cir. 2022). When analyzing this issue, we do "not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). A jury verdict is upheld if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Count 4 charged Caballero-Melgar with causing Cruz's death through the use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) and (j). "Section 924(j) makes it a crime to cause the death of another while committing a violation of 18 U.S.C. § 924(c), using or carrying a firearm in relation to a crime of violence or drug trafficking." *United States v. Al-Din*, 631 F. App'x 313, 329 (6th Cir. 2015). The underlying crime of violence was Count 3: aiding and abetting in the La Placita robbery.

To find Caballero-Melgar guilty of violating § 924(j), the jury had to find that the government proved the following beyond a reasonable doubt: first, that he aided and abetted in the commission of the La Placita robbery; second, that Caballero-Melgar or another person knowingly used a firearm; third, that the use of the firearm was during and in relation to the La Placita robbery; and fourth, that Caballero-Melgar or another person caused the death of Cruz as a result of that use. *See United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014) (stating elements). An aiding and abetting theory of liability is "embodied in every federal indictment, whether specifically charged or not." *United States v. McGee*, 529 F.3d 691, 695 (6th Cir. 2008) (citation omitted).

In his sufficiency challenge, Caballero-Melgar does not directly dispute that the government provided sufficient proof to satisfy the above elements. Rather, he argues only that the government fails to present evidence sufficient to convict Caballero-Melgar under a theory of *Pinkerton* liability, and that it cannot rely on an aiding and abetting theory because aiding and abetting was not charged in the indictment.

The government responds that it "did not rely on, and the jury did not have to find, *Pinkerton* liability" to find Caballero-Melgar liable for Cruz's death. CA6 R. 42, Appellee Br. at 54. It argues that the aiding and abetting theory of liability does apply because Caballero-Melgar

was convicted for aiding and abetting in Count 3, the underlying crime of violence, and that it was reasonably foreseeable that a death could occur during the robbery. In any case, the government contends that it sufficiently presented evidence to establish that Caballero-Melgar caused the shooting under two different liability theories.

To begin, Caballero-Melgar's argument fails under our holding in *McGee* that an aiding and abetting theory need not be explicitly charged in a federal indictment. *McGee*, 529 F.3d at 695. Further, there is no dispute that Caballero-Melgar is guilty of Count 3, aiding and abetting in the La Placita robbery. Caballero-Melgar also does not dispute that Reyes-Martinez caused Cruz's death through use of a firearm during that robbery. As Caballero-Melgar aided and abetted in the La Placita robbery that caused the death of Mr. Cruz, the evidence is sufficient to convict Caballero-Melgar of Count 4. Whether Caballero-Melgar was liable for Cruz's death under *Pinkerton*[2] is beside the point, and we do not review Caballero-Melgar's culpability under *Pinkerton* because it is unnecessary to uphold the conviction.

## C. Replacement of Counsel

Caballero-Melgar next assigns error to the district court's denial of his motion for new counsel. Under the Sixth Amendment, an accused person in all criminal prosecutions is afforded the right to the assistance of counsel for their defense. *United States v. Johnson*, 24 F.4th 590, 599 (6th Cir. 2022). A defendant's right to *choice* of counsel, however, is limited, meaning that defendants do not have unrestricted "ability to substitute their appointed counsel." *United States v. Steele*, 919 F.3d 965, 973 (6th Cir. 2019).

---

[2] The jury instructions pertaining to "reasonable foreseeability" are of no matter, as reasonable foreseeability need not be satisfied to prove that Caballero-Melgar was guilty of Count 4 under the statutory provisions of 18 U.S.C. § 924(j) and (c).

A limited ability to substitute appointed counsel does not preclude defendants from expressing dissatisfaction with appointed counsel and obtaining relief. When a defendant "brings 'any serious dissatisfaction with counsel to the attention of the district court,' the court has an obligation to inquire into the source and nature of the dissatisfaction and may grant a motion to withdraw or for substitute counsel if there is a showing of good cause." *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017) (quoting *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008)). A district court's "good cause" determination, as was made here, is reviewed for abuse of discretion. *United States v. Carson*, 796 F. App'x 238, 242 (6th Cir. 2019).

When reviewing a district court's denial of a motion to substitute counsel, we consider four factors:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) balancing the factors with the public's interest in the prompt and efficient administration of justice.

*Steele*, 919 F.3d at 973 (quoting *Mack*, 283 F.3d at 556). Caballero-Melgar argues that the district court erred by weighing the *Mack* factors in the government's favor. We review each factor.

### 1. Timeliness

Caballero-Melgar contends that timeliness weighs in his favor because he asked for his counsel's removal three times, the earliest of which was a year and a half before trial. The government counters that Caballero-Melgar's only relevant request for removal was made nine days before trial, so the district court did not abuse its discretion in finding that this motion "appear[ed] to be made to delay the trial," DE 508, Order, Page ID 2378, and reassignment was thus disfavored.

We agree with the government. Although Caballero-Melgar requested the replacement of his counsel in February 2019, the district court ordered that request withdrawn after holding a hearing in which Caballero-Melgar stated his intent to maintain his current counsel. And Caballero-Melgar himself characterized his second request as a desire to expedite the discovery process and litigation, not to complain about counsel. Thus, Caballero-Melgar's April 2021 motion to appoint new counsel is the only relevant motion. Considering that the motion was filed days before trial, this factor weighs against reassignment.

2. *Adequacy of the Court's Inquiry*

Caballero-Melgar argued that the district court did not adequately inquire into the dispute between him and his counsel. He provides specific instances of inadequacy, including the district court's failure to consult about the communication issues that were to COVID restrictions; its failure to discuss Caballero-Melgar's concerns about a plea offer, arguably because it hoped that he would simply take a plea; and its failure to clarify counsel's concession that there were other undisclosed matters, outside of legal strategy, that soured their relationship.

The district court's inquiry into the dispute should "give the defendant the opportunity to explain the basis for his dissatisfaction with counsel and to establish good cause for the appointment of substitute counsel." *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (per curiam). We have found that courts that personally invite defendants to express their dissatisfaction, and that invite responses from defense counsel to such allegations, have satisfied this factor. *See, e.g.*, *United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (inquiry adequate where defendant invited to explain alleged conflict and counsel was given opportunity to respond); *see also United States v. Jennings*, 945 F.2d 129, 132 (6th Cir. 1991) (remanding for

"the district court to personally inquire from each defendant his reasons for dissatisfaction with counsel").

In the motion hearing, the district court explained to Caballero-Melgar why it believed that his pro se motion was meritless. It then invited Caballero-Melgar to explain his other concerns— to which Caballero-Melgar primarily complained about inadequate access to discovery—and invited defense counsel to respond. In response to other issues highlighted by counsel, the district court told Caballero-Melgar that his counsel could not control the government's plea offer and reiterated that the government planned to seek life imprisonment if Caballero-Melgar were found guilty. It asked Caballero-Melgar, "is there anything else, Mr. Caballero-Melgar, that . . . you think I should know with respect to your request to have a new attorney appointed?" DE 587, Sealed Tr., Page ID 2807-08. Caballero-Melgar responded "No," and maintained his request for a new attorney who could "help [him] better." *Id.* at Page ID 2808.

By giving Caballero-Melgar and his counsel multiple opportunities to address their issues, the district court's inquiry was adequate. Caballero-Melgar's complaints on appeal touch on issues that were not raised before the district court by Caballero-Melgar, including COVID restrictions or references to other "undisclosed" matters without indication of what those might be. And the record belies his assertions that the district court avoided Caballero-Melgar's concerns with a plea offer, as the district court raised such concerns and provided Caballero-Melgar with a subsequent opportunity to speak about any remaining concerns.

*3. Breakdown in Communication*

Caballero-Melgar argues that the complete breakdown in communication with his counsel started long before the motion for new counsel at issue and persisted throughout his trial. He asserts that counsel decided not to communicate with him before the hearing on his November

- 14 -

2019 letter and took no steps to investigate his complaint about inaccurate translations. He also points to counsel's admission in the June 2021 hearing that there were significant communications issues, including about discovery review and pretrial motions. Finally, he argues that counsel's inability to mount an adequate defense was reflected in their failure to substantially cross-examine multiple important witnesses, their waiver of an opening statement, and their admission during closing that Caballero-Melgar acted as a lookout for the robberies.

But all of these matters raised by Caballero-Melgar on appeal are ancillary to the primary issue that he raised in his motion for new counsel: that counsel would not file the motion to dismiss counts of the indictment. Caballero-Melgar concedes that there is not a total breakdown of the attorney-client relationship when counsel is unwilling to pursue the legal strategy sought by a defendant. *See United States v. Trevino*, 7 F.4th 414, 429 (6th Cir. 2021).

The other instances raised by Caballero-Melgar on appeal also do not reflect a total communication breakdown. For one, Caballero-Melgar withdrew his November 2019 motion and did not complain about inaccurate translations (an issue initially raised by defense counsel) at any point thereafter. And the counsel's trial performance is not at issue here; rather, we are asked to evaluate the trial court's exercise of discretion to deny the motion based on the information that the court had at that time. Finally, we cannot find that, after listening to both sides' characterizations of the discovery dispute, the district court unreasonably concluded that the notion that no discovery was provided to Caballero-Melgar was not "realistic." DE 587, Mot. Hearing Tr., at Page ID 2808-09. This factor weighs against appointment of new counsel.

### 4. *Public Interest*

The last *Mack* factor requires the court to balance the previous three factors with "the public's interest in the prompt and efficient administration of justice." *Trevino*, 7 F.4th at 429.

Caballero-Melgar argues that the three-and-a-half-year duration of the litigation indicates minimal public interest in the "prompt" administration of justice. In contrast, the district court reasoned that the considerable length of the proceedings supported resolving the matter without further delay. The district court commented that trial preparation had already involved arrangements for the in-person testimony of witnesses and the presence of Spanish-speaking interpreters for trial.

We find that the public interest supported moving forward with trial. Although significant frustration with the delay of trial was merited, it appears that, in his briefing, Caballero-Melgar simultaneously argues that his speedy trial right was violated by delay *and* that further delay to find new counsel was in the public interest. That justice may not have been administered in a "prompt" manner here does not absolve the court of its obligation to administer justice as "efficient[ly]" as it could. *Id.* On balance, we agree with the district court that the *Mack* factors disfavored appointment of new counsel and find no abuse of discretion.

### D. Joinder

Caballero-Melgar next contends that the court erred in allowing a joint trial of his reentry charges and his Hobbs Act charges. Because Caballero-Melgar raised misjoinder for the first time on appeal, plain error review applies. *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015). We consider whether there is "(1) error (2) that was 'obvious or clear,' (3) that 'affected [the] defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Igboba*, 964 F.3d 501, 508 (6th Cir. 2020) (alteration in original) (quoting *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018)). As an "extremely deferential" standard, plain error is found "only in exceptional circumstances, and solely to avoid a miscarriage of justice." *Id.* (quoting *Donadeo*, 910 F.3d at 893).

Under Federal Rule of Criminal Procedure 8(a), an indictment may charge multiple crimes if the crimes "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Joinder under Rule 8(a) is permissive, meaning that the rule may be broadly construed to "promote the goals of trial convenience and judicial efficiency." *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (quoting *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983)). It is "appropriate" to join counts when they are "logically related, and there is a large area of overlapping proof." *Wirsing*, 719 F.2d at 863 (citations omitted). To determine whether joinder is appropriate, we consider the facial allegations included in the indictment, not proof offered at trial. *See United States v. Howell*, 17 F.4th 673, 686 (6th Cir. 2021). We construe an indictment "in favor of joinder." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (quoting *United States v. Hatcher*, 680 F.2d 438, 440 (6th Cir. 1982)).

Even presuming the joinder here was in error, Caballero-Melgar's claim of improper joinder fails because he does not demonstrate that the alleged error affected his "substantial rights." Fed. R. Crim. P. 52(b). He must so demonstrate by "mak[ing] a specific showing of prejudice," but he has failed to do so. *United States v. Fraser*, 448 F.3d 833, 842 (6th Cir. 2006) (quoting *Olano*, 507 U.S. at 735).

Caballero-Melgar argues that the mention of a "hot button topic" like unlawful immigration would significantly impact the jury's determination of whether he actively participated in the Hobbs Act robberies. CA6 R. 39, Appellant Br., at 32-33. He also contends that the government's emphasis on his immigration status when discussing the Hobbs Act charges in its closing statement showed prejudice. However, Caballero-Melgar shows no supportive case law or evidence that a jury determination on these unrelated counts would be impacted by their joinder. We have already

concluded that Counts 1 through 4 of the superseding indictment were supported by sufficient evidence and presume that juries separately consider counts, particularly when the counts do not involve overlapping evidence. *Cf. United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987).

Additionally, although Caballero-Melgar claims that the court in *United States v. Zapien*, No. 3:14-00037, 2015 WL 2137586 (M.D. Tenn. May 7, 2015) severed an illegal reentry count from other counts in the indictment in part based on prejudice, *Zapien* made no comment about the prejudice of the illegal reentry count. Rather, while reasoning that both an illegal reentry count and a count of possession by an illegal alien of a firearm were "irrelevant," the district court stated that "the *gun count*, in particular, adds potentially inflammatory allegations." *Zapien*, 2015 WL 2137586, at *3 (emphasis added). Thus, because we conclude that there was no prejudice, Caballero-Melgar cannot show plain error.

**E. Speedy Trial Right**

We turn to Caballero-Melgar's alleged violation of his Sixth Amendment right to a speedy trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend VI. Caballero-Melgar does not assert that the government did not comply with the Speedy Trial Act, 18 U.S.C. § 3161, but claims only a violation of his constitutional speedy trial right. "[W]e have previously held that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'" *United States v. O'Dell*, 247 F.3d 655, 666–67 (6th Cir. 2001) (quoting *United States v. DeJesus*, 887 F.2d 114, 116 (6th Cir. 1989)). We review this legal issue de novo and the district court's factual findings for clear error. *Id.* at 667.

Courts must balance four factors when determining whether a defendant was denied his Sixth Amendment speedy trial right: "whether delay before trial was uncommonly long, whether

the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). These related factors "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. If the speedy trial right has been violated, "dismissal of the indictment . . . is the only possible remedy." *Id.* at 522. We consider each factor in turn.

### 1. Length of the Delay

"In all Sixth Amendment speedy trial cases, the length of the delay is the triggering mechanism." *O'Dell*, 247 F.3d at 667. Here, the parties agree that the more than three-year delay before trial sufficiently triggers speedy trial concerns. *See United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007).

### 2. Reason for Delay

"The flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). Here, we assess "whether the government or the criminal defendant is more to blame for [the] delay." *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) (alteration in original) (quoting *Doggett*, 505 U.S. at 651). "[D]ifferent weights should be assigned to different reasons" for delay. *Barker*, 407 U.S. at 531. A bad-faith motivation for delay or "attempt[] to seek a tactical advantage" would "weigh heavily against the government." *Schreane*, 331 F.3d at 553. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered. . . ." *Barker*, 407 U.S. at 531. But "valid reasons for a delay weigh in favor of the government." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006). "The government bears the burden of explaining the cause of the delay." *United States v. Sutton*, 862 F.3d 547, 559 (6th Cir. 2017).

The government argues that any delay attributable to it was justified by a valid reason, including the complexity of the case and the resolution of the death penalty authorization process. Additionally, it argues that Caballero-Melgar also caused part of the delay through his pro se motions and motion for continuance of the trial date. By contrast, Caballero-Melgar contends that the government was wholly responsible for the two-year and three-month delay in the case before COVID-19 intervened. He points to delays by the government to pursue the death penalty, to "work out deals with the co-defendants," and to provide discovery. CA6 R. 39, Appellant Br., at 28. Caballero-Melgar also downplays the complexity of the case, arguing that it did not merit a multi-year delay.

We find it important to note first that nothing in the record suggests—and Caballero-Melgar does not argue—that any delays in this litigation were motivated by bad faith, harassment, or the government's desire to seek tactical advantage. Based on our analysis, while neither party is completely free of blame for the proceedings or is wholly culpable, this factor lightly favors the government.

First, each proffered reason for delay by the government is valid, and none supports a finding of a constitutional violation. To start, the case was declared complex from the outset, involving numerous defendants and robberies involved in the charged offenses. *United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006) ("That the delay was caused by the case's complexity favors a finding of no constitutional violation."). Those complexities, and the large amount of discovery involved, resulted in delays. But from December 13, 2017, the day that the case was declared complex, through December 3, 2018, the district court's status conferences reflect that defendants' counsel—a group including Caldwell—continued to request time to prepare and confer, which motivated the gaps between the case proceedings throughout this period. Although

a defendant does not "carry the full burden of his co-defendant's delays," *Maples v. Stegall*, 427 F.3d 1020, 1028 (6th Cir. 2005), Caballero-Melgar does not indicate any instance where his counsel objected to these requests for more time.

Additionally, the time needed to decide whether to seek the death penalty is a valid reason for delay. *See, e.g.*, *United States v. Abad*, 514 F.3d 271, 274 (2d Cir. 2008) (per curiam); *United States v. Duran-Gomez*, 984 F.3d 366, 375–76 (5th Cir. 2020). The district court recalled that this was likely "the biggest delay" in the litigation. DE 587, Mot. Hearing Tr., Page ID 2808. While an excessive delay due to this process can disfavor the government, *see, e.g.*, *United States v. Black*, 918 F.3d 243, 260–61 (2d Cir. 2019) (finding delay of nearly three years due to a death penalty authorization process weighed against the government), here, the authorization process added an additional five-month delay from December 2018 (the end of the additional time requested by defendants' counsel) to early May 2019. For a decision of this consequence, this delay does not weigh against the government. *See Duran-Gomez*, 984 F.3d at 375 ("Deciding whether it should seek the death penalty for a defendant is one of the government's gravest responsibilities. . . . The path to decision should be proportionately ruminative."). Finally, the COVID-19 pandemic was offered by both parties as a justifiable delay and therefore favors neither.

Caballero-Melgar also contributed to the delay. Defense counsel made multiple requests for continuances, and Caballero-Melgar specifically moved for (and was granted) a continuance of his trial date. *See United States v. Zabawa*, 719 F.3d 555, 563 (6th Cir. 2013) (holding that a defendant is a cause for delay when he agrees to postpone trial). Additionally, the time involved in addressing Caballero-Melgar's pro se letters and motions can be attributed to him. *United States v. Williams*, 753 F.3d 626, 633 (6th Cir. 2014) (finding government and district court not responsible for delay due to "antagonistic relationship" between defendant and appointed counsel).

In sum, there are factors throughout the over three years of Caballero-Melgar's pre-trial incarceration that weigh in both directions. However, given the lack of negligence or bad faith by the government, its valid reasons for delay, and Caballero-Melgar's requests for continuances, we find that the scales lightly favor the government on this factor.

### 3. *Defendant's Assertion of His Right*

"[T]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Williams*, 753 F.3d at 633 (omission in original) (quoting *Barker*, 407 U.S. at 531-32). No formal motion is required to preserve a speedy trial right claim. *Cf. United States v. Brown*, 819 F.3d 800, 822-23 (6th Cir. 2016). We consider Caballero-Melgar's letter to the court, dated October 23, 2019, his assertion of the right. But the government challenges this review, arguing that his counsel never filed a motion to dismiss based on speedy trial grounds and informed the court that he had not discussed such a motion with Caballero. We weigh this factor only lightly in favor of Caballero-Melgar because of his *pro se* letters, while also accounting for the lack of any related motion by his counsel.

### 4. *Prejudice*

The fourth *Barker* factor "requires the defendant to show that substantial prejudice has resulted from the delay." *Zabawa*, 719 F.3d at 563 (quoting *Robinson*, 455 F.3d at 608). Prejudice is analyzed through the three interests which the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 532). The showing of prejudice must be made with specificity. *United States v. Young*, 657 F.3d 408, 418 (6th Cir. 2011).

Caballero-Melgar argues that he was prejudiced by three-and-a-half years of pretrial detention. The government responds that Caballero-Melgar "would have been in custody regardless of this case" due to his unauthorized presence in the United States and the delay to his deportation due to COVID-19 travel restrictions. CA6 R 42, Appellee Br., at 37 (citing DE 607, Colloquy Tr. Sent., Page ID 3663; DE 565, PSR, Page ID 2688). In rebuttal, Caballero-Melgar emphasizes that the government's justification does not rationalize the pre-COVID period of pretrial incarceration. Further, even if that harm were insufficient to prove prejudice, Caballero-Melgar argues that the government's blameworthiness for inordinate delay presumptively causes prejudice.

We cannot find that Caballero-Melgar has established substantial prejudice sufficient to satisfy this factor. He does not explain how the period of pretrial incarceration before COVID-19 prejudiced him if his non-citizen status would have resulted in pre-deportation detention during this period as well. *See Zabawa*, 719 F.3d at 563. And no presumption of prejudice applies to his claim here because the delays in the case were not attributable to the government's negligence. *See id.* ("The presumption of prejudice only applies, however, when the delay is attributable to the government's negligence."). This factor therefore weighs in favor of the government.

In sum, after balancing the *Barker* factors, the first and third favor Caballero-Melgar and the second and fourth favor the government. Considering them as a whole, however, we find that Caballero-Melgar's Sixth Amendment right to a speedy trial was not violated. *See, e.g.*, *Williams,* 753 F.3d at 634 (finding Sixth Amendment claim failed when defendant unable to demonstrate that delay caused by government's bad faith or negligence, or that he was prejudiced by delay).

### F. Procedural Reasonableness

Caballero's next challenge focuses on the procedural reasonableness of his sentence—specifically, whether the district court applied the Guidelines range correctly. He first assigns error to the district court's application of the U.S.S.G. § 3B1.1 leadership enhancement, but the government argues that Caballero-Melgar waived the issue by agreeing to the application of the enhancement during his sentencing.

#### 1. § 3B1.1 Leadership Enhancement

When a defendant "explicitly agree[s]" to the application of a particular guideline calculation or enhancement, any challenge to that application on appeal is waived. *See United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002); *United States v. Priddy*, 808 F.3d 676, 681 (6th Cir. 2015) ("A defendant waives an argument that he does not qualify for a sentencing enhancement by 'explicitly agree[ing]' that he does qualify.") (quoting *Aparco-Centeno*, 280 F.3d at 1088), *abrogated on other grounds by United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc). An explicit agreement occurs when a defendant expresses a "plain, positive concurrence" with application of the enhancement. *Mabee,* 765 F.3d at 672. In contrast, an issue is forfeited when a defendant fails to make a timely assertion of his right and is subject to plain error review. *United States v. Russell*, 26 F.4th 371, 374-76 (6th Cir. 2022).

The leadership enhancement that Caballero-Melgar now challenges was mentioned briefly by his counsel at sentencing. There, Caldwell argued that the Guidelines' § 2A1.2 cross-reference to second degree murder should apply to determine his client's adjusted offense level, instead of the § 2A1.1 Guideline for first degree murder. During that argument, Caldwell stated:

> If . . . the Court were to agree to [the application of the § 2A1.2 cross-reference], then the base offense level would be a 38. **The four-point leadership or enhancement for managerial role, I believe, would still apply, which would bring [the offense level] to**

> **a 42.** The difference being, instead of being . . . advisory life as any Level 43 offense is, it would drop to a 42, which . . . makes the minimum or the bottom end of the guideline 30 years. The top end would still be life of imprisonment.

DE 607, Sent'g Tr., Page ID 3654 (emphasis added). The district court found that a departure under § 2A1.2 was not warranted and denied the motion. Caldwell conceded that he "ha[d] no grounds to object" to the denial. *Id.* at Page ID 3657.

In Caballero-Melgar's view, the above exchange focused solely on the applicability of the cross reference to U.S.S.G. § 2A1.2. He argues that the context of the counsel's comments proves that he did not intentionally waive application of U.S.S.G. § 3B1.1 but simply referenced it in a hypothetical manner. However, we cannot discount his counsel's express statement regarding the leadership enhancement. Caldwell stated that, if the district court agreed to the application of the § 2A1.2 cross reference, "[t]he four-point leadership or enhancement . . . I believe, would still apply." DE 607, Sent'g Tr., Page ID 3654. In other words, the district court's position as to the application of § 2A1.2 would have no impact on the inevitable application of the leadership enhancement. Rather than remaining neutral as to whether the enhancement applied, counsel appears to have expressly condoned its application. *See, e.g.*, *Aparco–Centeno,* 280 F.3d at 1088 ("Not only did Aparco–Centeno not object to the district court's consideration of the two prior convictions as aggravated felonies under 8 U.S.C. § 1326, he explicitly agreed that they qualified as such."). Given his concession of the enhancement's applicability, we conclude that Caballero-Melgar waived this particular argument.

### 2. *Application of U.S.S.G. § 2A1.1*

Caballero-Melgar next argues that the district court improperly calculated his base offense level using U.S.S.G. § 2A1.1, reaching a base offense level of 43. In his view, because the murder of Cruz was not premeditated, the Application Note for § 2A1.1 recommends following U.S.S.G.

§ 2A1.2, the Guideline for second degree murder. But the government maintains that Caballero-Melgar's actions constituted first degree murder under the felony-murder rule as defined by 18 U.S.C. § 1111(a), which is incorporated into § 2A1.1, and that no departure is warranted based on his actions.

Sentencing Guidelines Section 2A1.1, the Guideline for first degree murder, "applies in cases of premeditated killing" and "when death results from the commission of certain felonies"—that is, in instances of felony murder. U.S.S.G. § 2A1.1, cmt. n.1. The commentary for this provision also notes that, if the death was not caused "intentionally or knowingly" by the defendant, then a downward departure "may" be warranted to the second degree murder Guideline established in § 2A1.2. *Id.* § 2A1.1, cmt. n.2(B).

"[A] district court's discretionary refusal to depart downward is generally not appealable, unless the district court mistakenly believed it did not have legal authority to depart downward." *United States v. Pruitt*, 156 F.3d 638, 650 (6th Cir. 1998); *see also United States v. Schray*, 383 F.3d 430, 434 (6th Cir. 2004). "Where the district court's sentencing decision evinces a purposeful decision not to depart downward, however, it is not appealable." *United States v. Strickland*, 144 F.3d 412, 418 (6th Cir. 1998). The district court need not expressly state its awareness of its discretionary authority to depart downward, but the record must still make clear the court's awareness of that authority. *Id.*

The sentencing hearing transcript reveals that the district court purposefully denied the departure with awareness of its discretion. At Caballero-Melgar's sentencing, the government responded to Caballero-Melgar's argument for the departure permitted by § 2A1.2 by noting that it was a "discretionary" decision that the district court should decline to apply. DE 607, Sent'g Tr., Page ID 3655. After hearing both parties on the matter, the district court denied the departure

after considering Caballero-Melgar's leadership in directing the robberies and providing guns to his co-defendants, and the responsibility that Caballero-Melgar bore for the consequences of the robberies—including Cruz's death. The district court stated that it "absolutely agree[d] [with the government that] the departure [was] not warranted." *Id.* at Page ID 3656-67.

"[W]here the record does not provide any reason to doubt that the district court properly understood its discretion, this court will assume that the district court did understand its discretion." *United States v. Richardson*, 109 F. App'x 717, 718 (6th Cir. 2004) (citing *United States v. Ford*, 184 F.3d 566, 585 (6th Cir. 1999)). Such is the case here. We therefore affirm.

III.

For the foregoing reasons, we affirm.