RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant*,

    *v.*

ERIC MICHAEL SCHUSTER,

        *Defendant-Appellee*.

No. 23-3834

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:16-cr-00051-1—Timothy S. Black, District Judge.

Argued: October 31, 2024

Decided and Filed: May 2, 2025

Before: GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Mary B. Young, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellant. William R. Gallagher, ARENSTEIN & GALLAGHER, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Mary B. Young, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellant. William R. Gallagher, ARENSTEIN & GALLAGHER, Cincinnati, Ohio, for Appellee.

───────────────

## OPINION

───────────────

BUSH, Circuit Judge. More than six years after his indictment, Defendant-Appellee Eric Schuster moved to dismiss three felony child pornography charges pending against him. He argued the federal government's failure to bring him to trial violated the Sixth Amendment's

Speedy Trial Clause. Finding that Schuster caused most of the delay, the district court denied his motion. But upon reconsideration, the district court reversed course and dismissed his indictment with prejudice.

This is a difficult case, and the record before us should trouble any jurist. Because we respectfully disagree with how the district court applied the factors outlined in *Barker v. Wingo*, 407 U.S. 514 (1972), however, we **REVERSE**. Specifically, though some of the delay in Schuster's trial is attributable to the dilatory action of the district court, Schuster is more to blame for the overall delay. Perhaps most importantly, Schuster failed to sincerely assert his right to a speedy trial in a timely manner—Schuster's litigation conduct as a whole indicates that he did not want a speedy trial. And his failure to demonstrate prejudice resulting from the delay slams the door shut. Though finding ways to move this case forward more quickly would have been greatly preferable to the actual pace of the proceedings, Schuster was not denied his right to a speedy trial. His prosecution may go forward.

## I.

### A.

In 2014, federal law enforcement began investigating a website known as "Playpen," a site used to distribute child pornography. The Department of Justice eventually obtained a warrant authorizing agents to employ a special-investigative technique that revealed the IP addresses of Playpen users. Using the warrant, law enforcement obtained the identifying information of Playpen users, including one user who accessed Playpen from an address in Ohio associated with Schuster. Federal agents then obtained a warrant to search Schuster's residence and seize electronics found therein. The subsequent search of Schuster's home uncovered multiple devices containing thousands of images and videos of child pornography.

In May 2016, a federal grand jury indicted Schuster on three felony child pornography counts. At his detention hearing in June, Schuster pleaded not guilty on all counts, and the magistrate judge, upon the United States' motion, ordered Schuster detained pretrial. He would be detained for the entire period of the district court's proceedings—some 2,640 days (more than seven years).

**1.**

For the next three years, Schuster's case languished in the district court. This period was marked by delay after delay attributable to Schuster's own litigation conduct—a proposition he does not now dispute.

At first, Schuster requested several weeks of delay to review discovery and prepare a motion to suppress. The first motion to suppress came in August 2016 and was fully briefed the next month. The district court held a hearing on the motion in January 2017 and denied the motion two months later. Three days after the court denied the motion, it held a status conference to map out a path forward. By this time, the court's pretrial motions deadline had passed. But Schuster once again delayed. His counsel asked to conduct additional discovery, and the district court gave Schuster an additional month.

The month came and went, with Schuster requesting another month's delay to further investigate the possibility of additional motions and a plea offer. The court granted the extension, and Schuster later requested an additional two weeks to prepare his filings. This time, Schuster met the deadline, filing motions to compel evidence from the Playpen site and for a *Franks* hearing.[1] All this, only for Schuster to withdraw the motions a week later.

Schuster then sought even more delay. At a June 2017 status conference, his counsel explained that Schuster wanted to file more motions "basically on his own" and requested an additional continuance. Tr., R. 98, PageID 2183–84. Somewhat hesitant because "the motion filing deadline[]" was "long passed," the district court afforded Schuster a "final" opportunity to file additional motions, granting an additional month's delay. *Id.* at 2184–86. Schuster used that time to file a second *Franks* motion. But the court stayed briefing for the parties to explore a plea offer. Plea negotiations were unsuccessful, and at a September 2017 status conference, Schuster's counsel explained that Schuster "never told" counsel that he wanted to go to trial. Tr., R. 72, PageID 1633. Instead, counsel said Schuster "just [did not] seem to want to do anything." *Id.* Schuster filed a motion for new counsel two weeks later.

---

[1]*See Franks v. Delaware*, 438 U.S. 154 (1978).

By October 2017, new counsel was appointed and asked for a delay to get up to speed. To get the case moving again, the court instructed counsel to file a status report in a month. Counsel never filed that report, and in May 2018, the district court held a status conference. What accounted for the six-month delay? The court's docket entry from the May 2018 status conference indicated that defense counsel had requested further matters be stayed "pending the outcome of related litigation." Minute Entry, May 10, 2018. At the conference, Schuster's counsel noted he was now ready to file additional motions and that Schuster had "no objection" to his counsel taking additional time for motions practice. Tr., R. 89, PageID 2113.

In this next phase of delay, the first motion came five days later, with Schuster asking for a court-appointed expert. The court set an additional status conference for a month later. In the interim, Schuster filed a speedy-trial waiver, noting he was satisfied with the court's status conference date and waiving any right under the Speedy Trial Act that would hinder the court's intended schedule. At the June 2018 status conference, Schuster's counsel announced his intent to file additional motions and received another continuance until September 2018. In September (on the eve of the new motions' deadline), Schuster asked for and received another month's extension to prepare his motions.

In October, Schuster finally filed three long-awaited motions (the "October 2018 motions"): a motion to reconsider the court's denial of his August 2016 motion to suppress, a new motion to suppress, and another motion for a *Franks* hearing. By April 2019—almost three years after his indictment—briefing on Schuster's October 2018 motions was complete, with the parties now waiting for the district court to act.

**2.**

The district court, however, never decided the motions or set a hearing. Instead, the case stood still for twenty months. Eighteen months into the delay, Schuster asked for a status conference. He noted no action had been taken on his motions and suggested the delay could implicate his speedy-trial rights. The district court held a status conference in December 2020. Schuster's counsel explained that he recently requested additional discovery from the United States and planned to file another motion to compel. And because the forthcoming motion sought evidence related to the October 2018 motions, the "parties agree[d] that the discovery

issue should be resolved before" any further action was taken on the prior motions.  Minute Entry, Dec. 3, 2020.

Schuster filed his motion to compel eighteen days later, and briefing on the motion was completed in February 2021.  But the case again stalled for the next eighteen months.  The district court never acted on the December 2020 motion.  Nor did it take any action on the still-pending October 2018 motions.

In August 2021, about six months into the latest delay, Schuster filed a single-paragraph motion for bond.  The United States never responded to the motion, the court never ruled on the motion, and Schuster never followed up on the motion's status.  The case sat dormant for the next year.

**B.**

In August 2022, some eighteen months after briefing on the December 2020 motion to compel was complete, Schuster filed a motion to dismiss his indictment.  He argued the delay in his trial caused by the district court's failure to adjudicate his pending motions violated the Sixth Amendment's Speedy Trial Clause.

Initially, the district court denied Schuster's motion.  But Schuster moved for reconsideration.  And in response, the district court reversed course.  Though it found "no error in its application of law," the district court found reconsideration necessary because it had overlooked certain facts.  Order, R. 88, PageID 2101.

First, given the court's responsibility for a period of the delay, the court concluded that the second *Barker* factor—the reason for the delay—cut significantly in Schuster's favor. Second, because Schuster's October 2020 motion for a status conference effectively served to assert his speedy-trial right, the court explained it could "no longer find that the third *Barker* factor"—Schuster's assertion of his right—"weigh[ed] entirely against" him.  *Id.* at 2106.  "That said, given how long defendant waited to raise the issue for the first time, and given that, just seven weeks later," Schuster requested "that the pending motions be stayed," the court found that, instead of weighing in favor of Schuster, the third factor now fell in the neutral column.  *Id.*

Finally, the district court found that proper acknowledgement of the impact of incarceration during the COVID-19 pandemic moved the fourth factor from the neutral column into Schuster's column, at least "slightly." *Id.* at 2109.

Taken together, the district court held that its new *Barker* analysis revealed a violation of the Speedy Trial Clause. That holding required dismissal of Schuster's indictment with prejudice. The United States timely appealed.

**II.**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. The provision places an "affirmative constitutional obligation" on the prosecuting sovereign as whole—its prosecutors, courts, and legislature—to "try the defendant in a timely manner." *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999) (citation omitted). To determine whether the delay in a defendant's trial violates the Clause, we apply the test outlined in *Barker v. Wingo*, 407 U.S. 514 (1972).

*Barker* requires courts to examine four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. None is "a necessary or sufficient condition to the finding of a deprivation of the right." *Id.* at 533. That means a defendant can prevail on a speedy-trial claim despite losing on one of the factors. What's more, all four factors are interrelated, meaning that the proper approach requires a functional and holistic examination of the factors taken together. *See id*. at 521–23, 533. In applying *Barker* to the facts of this case, we review questions of law de novo and questions of fact under the clearly erroneous standard. *United States v. Smith*, 94 F.3d 204, 208 (6th Cir. 1996).

**III.**

Schuster undoubtedly experienced an unusually long delay. But applying the *Barker* factors, the delay did not violate the Sixth Amendment's Speedy Trial Clause, and the district court erred as a matter of law in concluding otherwise. To explain why, we walk through each of

the four factors. But our conclusion follows from three key points. First, Schuster himself is responsible for much of the delay. Second, Schuster failed to sincerely assert his right in a timely and consistent manner. Third, Schuster fails to demonstrate that he suffered a constitutionally relevant degree of prejudice.

**A.**

The first *Barker* factor—the length of the delay—serves two functions. Its first role is as a "threshold requirement." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003). That is, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). Generally, "[a] delay approaching one year is presumptively prejudicial." *Schreane*, 331 F.3d at 553. Once the threshold is met, the length of the delay's second function is to serve "as a measure of the severity of the prejudice suffered by an accused." *Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 34 (6th Cir. 2019). Unlike the first function, *Barker* rejected bright-line rules for measuring the impact of the delay's length. The analysis should not just be a numbers game. *See Smith v. United States*, 360 U.S. 1, 10 (1959) ("While justice should be administered with dispatch, the essential ingredient [of the Clause] is orderly expedition and not mere speed."). Whether a delay is constitutionally significant will depend "upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31.

All agree that the delay in Schuster's trial clears the threshold requirement and triggers the remainder of the *Barker* analysis. The question then becomes how the overall length of the delay impacts the remaining *Barker* factors. The salient point is this: Though Schuster's overall period of pretrial detention was long—more than seven years—Schuster either caused or acquiesced in the cause of much of the delay. That is significant. Where a defendant is the cause of a majority of the overall delay, this court has often held that the defendant's Sixth Amendment claim fails. *See, e.g.*, *United States v. Zabawa*, 719 F.3d 555, 563 (6th Cir. 2013). Here, the delay's length is outweighed by other factors.

**B.**

**1.**

The second *Barker* factor looks to the reasons for the delay. Because "pretrial delay is often both inevitable and wholly justifiable," *Doggett*, 505 U.S. at 656, the question is not whether there is delay, but whether the delay is unreasonable. And an essential aspect of determining reasonability under *Barker* is assigning responsibility for delays. Two possible responsible parties exist: the defendant and the prosecuting sovereign, which includes its prosecutors and courts. Often, trials are delayed for myriad reasons. So, *Barker* does not require courts to "search for a blameless party." *Wilson v. Mitchell*, 250 F.3d 388, 395 (6th Cir. 2001). Instead, the second factor asks courts to determine "whether the government or the criminal defendant is *more* to blame for [the] delay." *Doggett*, 505 U.S. at 651 (emphasis added).

If a defendant is responsible for the delay, matters simplify rather quickly. Only "those periods of delay attributable to the government or the court are relevant to [a defendant's] constitutional claim." *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000). So, when a defendant is the cause of the delay, he cannot use the delay "as a basis for a speedy-trial claim." *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011).

When the government causes the delay, the question turns from *who* caused the delay to *why* the delay occurred. *Barker* outlined three categories of government delay. First, the government may "deliberate[ly] attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531. This type of delay is to "be weighted heavily against the government." *Id.* Second, sitting in the middle are "more neutral reason[s]" for a delay, "such as negligence or overcrowded courts." *Id.* These reasons are to "be weighted less heavily" than deliberate attempts to delay. *Id.* Finally, the government's delay may be caused by "a valid reason," which serves to "justify appropriate delay." *Id.*

**2.**

We begin by clarifying the period of delay in dispute. Recall that Schuster's case sat in the district court from May 2016 (the time of his indictment) to April 2019 (the time Schuster's

three October 2018 motions were fully briefed).  Schuster does not argue that this period of delay can serve as a basis for his claim.  He all but concedes that this entire three-year period is attributable to his own litigation conduct.  And for good reason.  The relevant period was filled with delays he caused.  Schuster also does not seek to exploit the two-month period in which briefing was ongoing on his December 2021 motion to compel.

Instead, he bases his speedy-trial claim on two other periods of delay.  First, Schuster points to the twenty-month period between the completion of briefing on his October 2018 motions and his December 2020 request that adjudication of those motions be paused pending the disposition of his then-forthcoming motion to compel.  Second, Schuster points to the eighteen-month period between the completion of briefing on his December 2020 motion to compel and the filing of his first motion to dismiss.

**3.**

The parties dispute who is properly assigned responsibility for the periods of delay in which Schuster's motions were pending before the district court without action.  In Schuster's view, nearly all of the delay is attributable to the government.  And in the government's view, nearly all of the delay is attributable to Schuster.  Both views miss the mark.

The *Barker* framework initially assigns the responsibility for the time necessary to adjudicate defense motions to the defendant.  *See Young*, 657 F.3d at 415; *United States v. Loud Hawk*, 474 U.S. 302, 316–17 (1986) (noting that when a defendant seeks "the aid of the judicial process," he assumes the risks associated with "the deliberateness that a court employs in reaching a decision" (citation omitted)).  Here, that means the delays associated with adjudicating the motions are initially assigned to Schuster, and he cannot leverage those delays into sustaining a speedy-trial claim.

But that does not end the matter.  The question becomes whether the time taken to adjudicate pretrial motions is reasonable or justified.  *See United States v. Jones*, 524 F.2d 834, 850 (D.C. Cir. 1975); 5 W. Lafave, Criminal Procedure § 18.2(c), at 139 (4th ed. 2015).  If it is, then the reason for the delay caused by the adjudication remains with Schuster.  *See, e.g.*, *United States v. Williams*, 753 F.3d 626, 633 (6th Cir. 2014).  If, however, the length of the adjudication

becomes unreasonable, then the cause of that period of delay—the portion of time the motions were pending beyond that period which is reasonable—is attributed to the district court, either under the negligence or overcrowded-courts rubric. *See United States v. Graham*, 128 F.3d 372, 374–75 (6th Cir. 1997). Schuster can then leverage that "dilatory district court action" to justify a speedy-trial claim. *Young*, 657 F.3d at 414.

Precedent does not provide clear guidance for evaluating when a district court unreasonably delays in its adjudication of pretrial motions. Our cases have sometimes looked to factors such as the number of motions, the complexity of issues involved, whether the motions were frivolous or filed for purposes of delay, and the overall circumstances of the case. *See, e.g.*, *United States v. Bass*, 460 F.3d 830, 836–37 (6th Cir. 2006); *Maples v. Stegall*, 427 F.3d 1020, 1026–27 (6th Cir. 2005); *see also United States v. Moss*, 217 F.3d 426 (6th Cir. 2000) (considering similar factors in the context of the Speedy Trial Act). And Supreme Court precedent suggests that the defendant "bear[s] the heavy burden of showing" that the time the court took to dispose of a motion was "unreasonable" or "wholly unjustifiable." *Loud Hawk*, 474 U.S. at 316.

As to the district court's first period of delay in adjudication (April 2019 to December 2020), Schuster has not established that the delay was unreasonable. The district court explained that the main driver of its delay was its desire to await the outcome of several Sixth Circuit cases that may have shed light on Schuster's October 2018 motions.[2] Schuster now maintains it was unreasonable for the district court to await decisions in these cases.

---

[2]The district court also suggested that its delay was justified, at least in part, because COVID-19 precluded the court from holding a hearing on the motions. Our precedent suggests that delays caused by the pandemic are either "a valid reason that . . . weighs against the defendant[] (or at least . . . a neutral reason that favors neither party)." *United States v. Allen*, 86 F.4th 295, 305 (6th Cir. 2023) (per curiam). But we do not see how the delay here can be legitimately attributed to the pandemic. The district court acknowledged that it "intended to hold oral argument and not necessarily an evidentiary hearing" on Schuster's motions. Order, R. 88, PageID 2108 n.5. Oral arguments could have been held via video conference, as the Southern District of Ohio did for a wide variety of criminal proceedings throughout the pandemic. *See, e.g.*, General Order No. 22–21 (S.D. Ohio Oct. 21, 2022). Perhaps a period of the delay can be attributed to the transition to remote technology during the early days of the pandemic (and clearing any backlog caused by that transition). But once the technology was in place, it is difficult to blame the district court's delay on the pandemic. Even under *Allen*, the district court must actually demonstrate the delay was attributable to the pandemic. It did not do so here.

While waiting for some other court to act may be unreasonable in other speedy-trial cases, the record here demonstrates that Schuster was complicit in this delay. Whether or not the district court's decision to await the Sixth Circuit cases was reasonable,[3] Schuster did not object to the delay and indeed acquiesced in it. Worse still, he may have been at fault for part of the delay. At the December 2020 status conference, the district court described having contacted defense counsel about several of the opinions once they were issued and asked for his views on whether the opinions resolved the issues in Schuster's pending motions. Defense counsel evidently told the district court he would get back to the court but never did. Since delays caused by defense counsel are attributable to the defendants they represent, *Vermont v. Brillon*, 556 U.S. 81, 85 (2009), it would be inequitable to place too much fault on the district court for awaiting the disposition of the Sixth Circuit cases without also factoring in defense counsel's fault in the matter. *See United States v. Sutton*, 862 F.3d 547, 560–61 (6th Cir. 2017) (noting "the second *Barker* factor asks the court to weigh the equities in each case," which means "weigh[ing] the relative faults of all parties involved").

The district court's second period of delay (February 2021 to August 2022) is harder to justify. The final pending Sixth Circuit case was decided in February 2021, so the justification supporting the original delay has no force in the second. Although we do not attempt to quantify the precise moment when its delay became "wholly unjustifiable," we do not doubt that, at some point, the reason for the delay shifted from Schuster to the district court. Put simply, it was unreasonable for the district court to take more than eighteen months to rule on Schuster's motions, even if they presented issues of some complexity.

We also agree with the district court that this delay is properly characterized as stemming from the court's negligence in failing to decide the motions. Schuster does not contend that the district court was deliberately "attempt[ing] to delay the trial in order to hamper [his] defense."

---

[3]Schuster now claims that the district court did not inform the parties, either formally or informally, that it decided to await the Sixth Circuit cases. But he cites no evidence for that proposition, and the evidence in the record is to the contrary. At the December 2020 status conference, the parties discussed the Sixth Circuit cases, and the conversation made clear the court had discussed the issue with defense counsel before. The district court also found that it had given notice, albeit informally and off the record. We review that factual finding for clear error. *Smith*, 94 F.3d at 208. Since the December 2020 status conference transcript supports the district court's finding, and Schuster provides no evidence to the contrary, there is no reason to disturb the district court's finding that it gave the parties notice.

*Barker*, 407 U.S. at 531. So, a period of the second delay weighs in favor of Schuster, but as a "more neutral" reason, we accord it less weight. *See id.*

With blame pointing in both directions, we must next determine who "is more to blame" for the delay. *Doggett*, 505 U.S. at 651. Considering the case in its totality, we hold that the delay attributable to the district court cannot overcome the weight that is owed to Schuster's responsibility for the majority of the overall delay. That conclusion aligns with our precedent. We have repeatedly held that even where some period of delay is attributable to the government, the second factor can still weigh against the defendant if he is responsible for a significant period of the overall delay. *See, e.g.*, *Zabawa*, 719 F.3d at 563; *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007). That is the case here. Even attributing to the district court most of the delay from April 2019 to December 2020 and from February 2021 to August 2022, Schuster would still have caused the majority of the seven-year delay. Because he is more to blame for the overall delay, the second factor favors the United States.

## C.

*Barker*'s third factor requires consideration of "the defendant's assertion of or failure to assert his right to a speedy trial." 407 U.S. at 528. To succeed on this prong, Schuster must do more than merely assert his right. And we must decide what weight to give a particular assertion, *see Loud Hawk*, 474 U.S. at 314–15, a decision that is informed by a variety of factors, including the timing, force, and frequency of the assertion, as well as the defendant's surrounding litigation conduct. *See Barker*, 407 U.S. at 534–36; *Cain v. Smith*, 686 F.2d 374, 384 (6th Cir. 1982).

This third factor cuts in the United States' favor. All agree that Schuster purported to assert his right when he filed his first motion to dismiss in August 2022, more than six years after his indictment. But that is not enough to place the third factor in Schuster's column. *See, e.g.*, *Loud Hawk*, 474 U.S. at 314–15. And Schuster's remaining attempts to demonstrate sincere assertions of his right, when combined with his other litigation conduct, lack the timing, force, and frequency necessary to tip the third factor in his direction.

Start with timeliness.  Schuster concedes that the first time he attempted to assert his right to a speedy trial was with the filing of his motion for a status conference in October 2020.  That assertion came almost four and half years after his indictment.  True, we cannot expect a defendant to know exactly when—pursuant to the application of a four-factor balancing test—his constitutional right to a speedy trial has been violated.  But on this record, Schuster's "failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim."  *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999).

To be sure, Schuster's October 2020 motion for a status conference vaguely linked the court's delay in adjudicating his motions to his right to a speedy trial.  The district court, therefore, correctly concluded that the October 2020 motion counted as an assertion of Schuster's right to a speedy trial.  But Schuster undermined the force given to that singular assertion two months later, when he requested that the court withhold any decision on his pending motions until it decided a discovery motion Schuster had yet to file.

On this score, *Williams* is instructive.  There, the defendant repeatedly said that he wanted a speedy trial.  *See* 753 F.3d at 633.  But "at the same time he expressed his desire to go to trial," he also asked his counsel to file numerous pretrial motions that "imped[ed] the progress of the case."  *Id.*  We found that latter litigation conduct inconsistent with a desire for a speedy trial and concluded the conduct robbed the simultaneous invocations of the right of any serious force.  *Id.* at 633–34.  Our decision in *United States v. Allen* reached a similar conclusion.  86 F.4th 295 (6th Cir. 2023) (per curiam).  There, we concluded that a defendant's "stop-and-go conduct"—consenting to delays, then objecting to delays, only to consent once again—undermined the sincerity of his request for a speedy trial.  *Id.* at 306.

The rationale of *Williams* and *Allen* applies with equal force here.  Though Schuster asserted his right to a speedy trial in his October 2020 motion, his conduct in the surrounding litigation sent mixed signals, which strips his assertion of much of its force.

The frequency of Schuster's assertions also cuts against him.  *See Barker*, 407 U.S. at 529.  Schuster's October 2020 motion was the only time he asserted his Sixth Amendment right before his motion to dismiss.  For the first time on appeal, Schuster argues his August 2021

motion for bond should be given some weight in assessing his assertion of his right. This forfeited argument has little force. It's true that we have held repeated motions for bond can, in appropriate circumstances, be viewed as "the functional equivalent of a demand for a speedy trial." *Cain*, 686 F.2d at 384 (citation omitted). But Schuster's single, barebones request for bond some five-years post detention "does not demonstrate a vigorous assertion of the right to a speedy trial." *Wood v. Vasbinder*, 310 F. App'x 861, 865 (6th Cir. 2009). The single-paragraph motion—never followed up on again—failed to express a desire for a trial and failed to demonstrate the "timeliness, vigor, and frequency" indicative of a sincere request for one. *Cain*, 686 F.2d at 384. And even if some initial weight is given to the motion, Schuster's surrounding conduct belies the assertion that he wanted a speedy trial. *See Barker*, 407 U.S. at 534–36 (concluding that, despite requesting and receiving bond, the habeas petitioner's surrounding conduct indicated that he did not want a speedy trial).

Taken as a whole, Schuster's other conduct "cast[s] doubt on the sincerity" of his belated demand for a speedy trial. *See Williams*, 753 F.3d at 633 (citation omitted). And his August 2022 motion to dismiss cannot save him. Here, *Barker* is particularly instructive. There, the defendant waited until almost four years after his indictment to move to dismiss. *Barker*, 407 U.S. at 534–35. The Court held that belated motion was insufficient to constitute a timely assertion of the defendant's speedy-trial right. *Id.* Instead, the Court concluded the delay "strongly suggest[ed] that while [the defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Id.* at 535.

So too here. Schuster's litigation conduct over the entire case indicates that he "did not want a speedy trial." *Id*. at 534. His "substantial contributions" to the pre-April 2019 delay "belie his later attempts to assert his speedy trial rights." *United States v. Mallett*, 751 F.3d 907, 914 (8th Cir. 2014). For years, Schuster delayed his own trial through repeated requests for continuances on upcoming deadlines, bringing on a new attorney and requesting extensions for that attorney to get up to speed, and filing (and withdrawing) numerous and repetitive motions. And when he finally asserted his right to a speedy trial years later, Schuster immediately asked

for additional delays to give him time to file new motions. The third factor thus weighs in the United States' favor.

\* \* \*

On this record, the third factor is significant to the outcome of the overall *Barker* balance. *Barker* explained that where the "record strongly indicates . . . that the defendant did not want a speedy trial," courts should be "reluctant" to find a Sixth Amendment violation absent "extraordinary circumstances." 407 U.S. at 536. *Barker* suggested three extraordinary circumstances justifying such a departure: "a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted ex parte." *Id.* Not one is present here. At this stage, there is no suggestion Schuster received ineffective assistance of counsel. Nor did the district court grant any continuances without Schuster's knowledge. And as explained below, Schuster fails to make a substantial showing of prejudice, let alone severe prejudice. So, Schuster's failure to sincerely assert his right all but dooms his Sixth Amendment claim.

**D.**

The fourth *Barker* factor, prejudice to the defendant from the delay, further confirms that Schuster's Sixth Amendment right was not violated. *Barker* recognized three forms of prejudice: the impact of 1) oppressive pretrial incarceration, 2) increased anxiety and concern associated with being under prosecution, and 3) the delay on a defendant's ability to defend himself at trial. 407 U.S. at 532. The first two are harms a defendant experiences wholly unrelated to his ultimate success at trial. The third turns exclusively on trial prejudice and is the "most important factor" under the prejudice prong. *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993). When evaluating prejudice, we are mindful that "prejudice is inherent in any delay, however short." *United States v. Marion*, 404 U.S. 307, 322 (1971). But that does not mean the prejudice prong then always tilts in the defendant's favor. Prejudice must typically be "substantial" to establish a Sixth Amendment violation. *United States v. DeClue*, 899 F.2d 1465, 1471 (6th Cir. 1990). And this factor must always be viewed in concert with the defendant's performance on the other factors. *See, e.g.*, *Allen*, 86 F.4th at 307; *DeClue*, 899 F.2d at 1471.

On appeal, Schuster makes no attempt to demonstrate that the delay caused actual prejudice to his defense at trial. That is significant, as trial prejudice is the most serious and important form of prejudice. *See Barker*, 407 U.S. at 532; *White*, 985 F.3d at 276. Instead, Schuster relies on the two non-trial forms of prejudice.

As to prejudice caused by incarceration, the district court found significant the elevated toll of being incarcerated during the COVID-19 pandemic, an argument Schuster reiterates on appeal. None can deny that the pandemic increased the "detrimental impact on the individual" incarcerated. *Barker*, 407 U.S. at 532. But Schuster's own conduct prevents placing any serious weight on prejudice caused by the pandemic. *Cf. Allen*, 86 F.4th at 307. He failed to object to substantial periods of his incarceration, including most of the period impacted by the pandemic. Schuster's August 2021 motion for bond—his only attempt to secure release from custody prior to his motions to dismiss—did not even mention the pandemic. The same is true for his initial motion to dismiss and amended motion to dismiss. Both filings argued Schuster experienced prejudice stemming from his incarceration. But neither motion—filed some two and a half years into the pandemic—mentioned, even once, the elevated toll of being incarcerated during the pandemic.

Schuster's first mention of pandemic-prison conditions came two years and nine months into the pandemic and constituted a single sentence in a ten-page brief. The first time he seriously developed the argument came in his May 2023 motion for reconsideration. Even then, Schuster contributed only two sentences to the matter.

Schuster's general reliance on a lengthy period of incarceration cannot move the needle in his direction. That is particularly so in light of his inability to establish trial prejudice and his performance on the other *Barker* factors. Through his substantial contributions to the delay, Schuster himself precipitated much of the general harm coming from his pretrial detention. And when a defendant is responsible for much of the prejudice he complains of, he cannot leverage that prejudice in his favor. *See, e.g.*, *DeClue*, 899 F.2d at 1471. Doing so would run afoul of the general rule that a defendant may not use the costs of delays they cause "as a basis for a speedy-trial claim." *Young*, 657 F.3d at 415. Schuster's threadbare assertions of his right to a speedy

trial also undermine his prejudice claim. We thus conclude that Schuster sustained no prejudice that would tilt this factor in his favor.

**IV.**

With all that said, this remains a hard case, given the standard that we must apply. That the *Barker* factors cut against Schuster is not to suggest the district court's handling of this case was ideal. It was not. The court should have done more to move the case forward consistent with its "affirmative constitutional obligation" to try Schuster in a timely manner. *Brown*, 169 F.3d at 349 (citation omitted). Nor was the conduct of the United States Attorney's Office without fault. The district court may have been the primary cause of the government-imposed delays, but the Office should have done more to assure the prompt adjudication of Schuster's motions. Although the Office may have reasonably expected the court to act on the motions in a timely manner, when the court failed to do so "after the passage of a considerable period of time, reasonable diligence requires the government to follow-up on the matter." *Schreane*, 331 F.3d at 556. Indeed, it is the "constitutional duty" of all arms of the prosecuting sovereign—and not the duty of the defendant—"to make a diligent, good-faith effort," *Smith v. Hooey*, 393 U.S. 374, 383 (1969), to ensure every criminal case is prosecuted "with customary promptness," *Doggett*, 505 U.S. at 652.

That said, the Sixth Amendment does not impose a code of judicial and prosecutorial best practices. It imposes a consideration of the totality of the circumstances and a high bar for a defendant to obtain "the unsatisfactorily severe remedy" of dismissal with prejudice. *Barker*, 407 U.S. at 522. Schuster does not clear that bar here.

\* \* \*

For these reasons, we reverse the district court's judgment and remand for further proceedings.